Charles H. ROLLINS, Jr., Appellant,

v.

Fran ULMER, Lt. Governor, State of Alaska, Sandra Stout, Director, Elections, State of Alaska, Jim Kentch, and Alaskans for Medical Rights, Appellees.

No. S–9197.

Supreme Court of Alaska.

Jan. 12, 2001.

---

18. Alaska R.App. P. 602(a).

19. *See* Alaska R. Civ. P. 61.

Charles H. Rollins, Jr., pro se, North Pole.

Dean J. Guaneli, Chief Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellees Fran Ulmer and Sandra Stout.

Douglas Pope, Pope & Katcher, Anchorage, for Appellees Jim Kentch and Alaskans for Medical Rights.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

### OPINION

BRYNER, Justice.

## I. INTRODUCTION

Charles Rollins challenges Alaska's medical marijuana law, contending that its registration requirements violate the constitutional right to privacy. Because the law bars public access to the medical marijuana registry and limits state use to legitimate purposes, we reject Rollins's privacy arguments and affirm the superior court's decision declaring the law constitutional.

## II. FACTS AND PROCEEDINGS

In 1998 Alaska voters approved a "medical marijuana" initiative. Sponsored by Alaskans for Medical Rights, the initiative passed as Ballot Measure 8 and was codified as AS 17.37.010. The law allows Alaskans with debilitating conditions to use marijuana for medical purposes upon a physician's certification that the use might be beneficial.[1] To ensure compliance with its provisions, the law requires medical marijuana users to register with the Department of Health and Social Services; the department then issues identification cards and maintains a registry of authorized users.[2]

Shortly after Alaskans for Medical Rights submitted Ballot Measure 8 to the Division of Elections, Charles Rollins filed a complaint in superior court raising procedural claims to

---

1. AS 17.37.010.

2. *See id.*

bar the division from certifying the measure and asserting that the initiative violated constitutional privacy and equal protection rights. Rollins later amended his complaint to challenge the initiative based on constitutional violations of article XI, sections 1 and 7, which concern procedures for and restrictions on the initiative and referendum process. Alaskans for Medical Rights intervened in support of the measure.

After the election, Rollins withdrew his procedural claims, opting to pursue only his complaint that the measure violated privacy rights. The state, joined by Alaskans for Medical Rights, moved for summary judgment. Rollins filed a cross-motion for partial summary judgment. The superior court granted summary judgment to the state, declaring the medical marijuana law constitutional. Rollins appeals.

## III. DISCUSSION

■ On appeal, Rollins renews his claim that the medical marijuana law's registration requirements infringe the constitutional right to privacy.[3] We find guidance on this point in *Falcon v. Alaska Public Offices Commission*,[4] and in a United States Supreme Court decision discussed by *Falcon, Whalen v. Roe*.[5]

In *Falcon*, an Alaska physician challenged the constitutionality of a newly adopted conflict of interest statute that required him to disclose the names of his patients in order to serve on the school board. To determine whether Alaska's statute violated his constitutional right to privacy, we turned to the Supreme Court's decision in *Whalen*.

*Whalen* addressed the constitutionality of a statute requiring New York physicians to submit to the state health department the names and addresses of all persons receiving prescriptions for certain "Schedule II" drugs—including opium, cocaine, methadone, amphetamines, and methaqualone—for which there are both lawful and unlawful markets.[6] The physicians and patients challenging the statute argued that it violated constitutionally protected privacy rights by requiring disclosure of personal matters and by interfering with individual freedom to make important treatment decisions.[7] They argued that disclosure of information about the prescription and use of drugs like cocaine and opium might make some patients "reluctant to use, and some doctors reluctant to prescribe, such drugs even where their use is medically indicated."[8]

Rejecting this risk as insufficient to establish a constitutional violation, the Court in *Whalen* emphasized that the New York statute made information collected by the health department confidential and prohibited from public disclosure.[9] Noting that involuntary public disclosure could occur only if health department employees violated the law by failing to maintain proper security or if a patient or doctor were formally accused in a judicial proceeding, the Court concluded that neither outcome invalidated the statute.[10] The Court found no evidence to support the physicians' and patients' fears that department employees might violate the statute's confidentiality provisions; moreover, in the Court's view, "the remote possibility that judicial supervision of the evidentiary use of particular items of stored information will provide inadequate protection against unwarranted disclosures is surely not a sufficient reason for invalidating the entire patient-identification program."[11]

In *Falcon*, we read *Whalen's* privacy analysis "as a recognition that where appli-

---

3. Alaska Constitution, article I, section 22, provides: "The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section."

4. 570 P.2d 469 (Alaska 1977).

5. 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977).

6. *See id.* at 591–93 & n. 8, 97 S.Ct. 869.

7. *See id.* at 595, 598–600, 97 S.Ct. 869.

8. *Id.* at 600, 97 S.Ct. 869.

9. *See id.* at 593–94 & n. 12, 97 S.Ct. 869.

10. *See id.* at 600–01, 97 S.Ct. 869. The Court also noted that a doctor, pharmacist, or patient may voluntarily reveal the information on a prescription form. *See id.* at 600, 97 S.Ct. 869.

11. *Id.* at 601–02 & n. 27, 97 S.Ct. 869.

cable rules or regulations insure that [potentially stigmatizing personal] information will be available only to authorized personnel in the context of a valid governmental program, no constitutional violation has occurred."[12] Applying this analysis, we observed that, although disclosing a person's doctor visits ordinarily does not infringe a significant privacy interest, the disclosure may reveal the nature of the patient's ailment.[13] In these situations, we held, "the individual's privacy interest in protecting sensitive personal information from public disclosure" outweighs the government's interest in compelling full public disclosure to prevent political conflicts of interest.[14] Because Alaska's law made all conflict of interest disclosures available to the public and allowed no exemption for physicians or patients with sensitive information, we concluded that the law posed a threat to protected privacy rights.[15] To prevent invasion of these rights, we enjoined the Alaska Public Offices Commission from applying the law to physician-patient situations until it adopted appropriate curative regulations.[16]

*Whalen* and *Falcon* frame our present analysis. *Falcon* acknowledges that "certain types of information communicated in the context of the physician-patient relationship

fall within a constitutionally-protected zone of privacy."[17] And *Whalen* specifically recognizes that a drug-use registry like the one at issue here can threaten two facets of constitutional privacy: the right to avoid public disclosure of personal matters and the right to privacy in consulting a physician and making medical treatment choices.[18] Rollins contends that the Alaska medical marijuana law's registry infringes both privacy interests.[19] But in fact it violates neither.

It can hardly be disputed that the medical marijuana registry requires disclosure of sensitive information: mere presence in the registry identifies a person as suffering from a "debilitating medical condition" and as being a marijuana user. We agree with Rollins that the general publication of this information could be stigmatizing and invasive of the right to privacy.[20] But the law's drafters anticipated this concern and fully addressed it.

The medical marijuana law does not require medical marijuana users to divulge any details about the debilitating conditions they suffer.[21] And although it does require them to register and to identify their approving physicians, the law explicitly requires the department to keep the registry confidential:

**12.** *Falcon*, 570 P.2d at 479.

**13.** See *id.* at 479–80.

**14.** *Id.* at 480.

**15.** See *id.*

**16.** See *id.*

**17.** *Id.* at 478 & nn. 36–37 (citing *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Ravin v. State*, 537 P.2d 494, 515 (Alaska 1975) (Boochever, J. and Connor, J., concurring)).

**18.** *Whalen*, 429 U.S. at 599–600, 97 S.Ct. 869.

**19.** Citing *Ravin v. State*, 537 P.2d 494 (Alaska 1975), Rollins also suggests that the medical marijuana law violates a third aspect of constitutional privacy: the right to personally possess and use marijuana. But *Ravin* ultimately established that although the privacy clause in the Alaska constitution guarantees Alaskans a basic

right to privacy in their homes, the clause does not guarantee a right to use marijuana. *Ravin*, 537 P.2d at 504. See also *Cleland v. State*, 759 P.2d 553, 557 (Alaska App.1988) (stating that "the sanctity of the home [is] protected by the privacy clause, not the use of marijuana"). Because the medical marijuana law regulates possession and use of marijuana outside the sanctity of the home, and because the state unquestionably has broad power to regulate the administration of drugs for medical purposes, *Whalen*, 429 U.S. at 603 n. 30,, 97 S.Ct. 869 *Ravin* is inapposite to the case at hand.

**20.** See 21 U.S.C. § 812 (providing schedules of controlled substances); AS 11.71.050 & .060 (describing the misdemeanor of misconduct involving controlled substances).

**21.** AS 17.37.070(4) defines "debilitating medical condition" to mean any of a number of serious ailments, including cancer, glaucoma, positive status for human immunodeficiency virus, or acquired immune deficiency syndrome, or any other chronic or debilitating disease that requires treatment for severe pain, severe nausea, seizures, muscle spasms, or any other medical con-

the registry is closed to public access; only authorized public officials may use it; and even they must confine their use to narrowly specified purposes. The statute provides:

(a) ... The registry and the information contained within it are not a public record under AS 09.25.100—09.25.220. Peace officers and authorized employees of state or municipal law enforcement agencies shall be granted access to the information contained within the department's confidential registry only

(1) for the purpose of verifying that an individual who has presented a registry identification card to a state or municipal law enforcement official is lawfully in possession of such card; or

(2) for the purpose of determining that an individual who claims to be lawfully engaged in the medical use of marijuana is registered or listed with the department or is considered to be registered or listed under (g) of this section.

(b) Except as provided in (a) of this section, a person, other than authorized employees of the department in the course of their official duties, may not be permitted to gain access to names of patients, physicians, primary or alternate caregivers, or any information related to such persons maintained in connection with the department's confidential registry.[22]

*Falcon* specifies that when "applicable rules or regulations insure that [potentially stigmatizing] information will be available only to authorized personnel in the context of a valid governmental program, no constitutional violation has occurred."[23] The medical marijuana law's confidentiality provisions meet these specifications.

█ Rollins nonetheless complains that one has no guarantee that the government will comply with the law's confidentiality requirements. He offers hypothetical scenarios in which privacy rights might be violated—the state's computer system might not be secure; or federal prosecutors might demand access to registry information in order

to prosecute medical marijuana users under federal law. But like the appellants in *Whalen,* Rollins provides no evidence to substantiate his fear that the confidential registry might be mishandled.[24] We thus hold, as the Court held in *Whalen,* that these unsubstantiated fears provide no basis for declaring the law invalid.

█ Rollins further suggests that, even if the registry is kept confidential, its mere existence burdens one's freedom to make medical treatment choices, because it causes fear of stigmatization. But again, Rollins's concerns lack constitutional grounding. In *Whalen,* the Supreme Court rejected a similar challenge to New York's Controlled Substances Act, noting that, "[w]ithin dosage limits which appellees do not challenge, the decision to prescribe, or to use, is left entirely to the physician and the patient."[25] Alaska's medical marijuana law is even less restrictive than the New York statute upheld in *Whalen.* The Alaska statute does not fix dosage limits, nor does it require that patients have a prescription.[26] As long as a patient submits a letter from a physician certifying that the patient may benefit from marijuana, the decision to use marijuana as a medical treatment is left entirely to the individual.

While the confidential registry might deter some skeptical patients from pursuing medical marijuana treatment, this incidental deterrence, standing alone, cannot establish a constitutional violation. If our constitution permitted only a perfect system of regulating medical marijuana—one that would overcome the fears of all potential medical marijuana users—then, as a practical matter, no regulation would ever be possible. As the Court recognized in *Whalen,* there are

a host of ... unpleasant invasions of privacy that are associated with many facets of health care. Unquestionably, some individuals' concern for their own privacy may lead them to avoid or to postpone needed medical attention. Nevertheless, disclosures of private medical information to

---

dition approved by the department by regulation or petition.

**22.** AS 17.37.010.

**23.** *Falcon,* 570 P.2d at 479.

**24.** *See Whalen,* 429 U.S. at 601–02 & n. 27, 97 S.Ct. 869.

**25.** *Id.* at 603, 97 S.Ct. 869.

**26.** *See generally* AS 17.37.010–.080.

doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient. Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy.[27]

Here, we similarly conclude that Alaska's medical marijuana law leaves patients and their physicians broad freedom to choose marijuana for medical treatment of debilitating conditions. Accordingly, we hold that the law does not interfere with the constitutional right to make independent medical choices.[28]

## IV. CONCLUSION

Because the medical marijuana law's confidential registration process does not violate the constitutional right to privacy, we AFFIRM the superior court's judgment.

---

27. *Whalen,* 429 U.S. at 602, 97 S.Ct. 869 (footnote omitted).

28. Rollins raises two collateral points concerning the superior court's handling of discovery matters, arguing that the court erred in ordering Rollins's mother not to use the public records act to obtain information to support Rollins's litigation and in failing to compel the state to respond to his discovery requests. Both points address matters extraneous to this appeal. Rollins's mother sought information that had nothing to do with this case and that she did not intend to share with her son. Rollins's discovery request sought information regarding the state's handling of the ballot measure certification process—a procedure that Rollins voluntarily abandoned below. Because these points have no conceivable bearing on the validity of the judgment at issue in this appeal, we do not address them.