NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter.  Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts.*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections @ appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA


| | | |
|---|---|---|
| CARRIE D. SIMANTS, | ) | |
| | ) | Court of Appeals No. A-11404 |
| Appellant, | ) | Trial Court No. 1SI-11-381 CR |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Appellee. | ) | No. 2419 — July 3, 2014 |
| | ) | |

Appeal from the Superior Court, First Judicial District, Sitka,
David V. George, Judge.

Appearances:  Brooke Berens, Assistant Public Advocate, and
Richard Allen, Public Advocate, Anchorage, for the Appellant.
Jean E. Seaton, Assistant District Attorney, Sitka, and Michael
C. Geraghty, Attorney General, Juneau, for the Appellee.

Before:  Mannheimer, Chief Judge, Allard, Judge, and Hanley,
District Court Judge.[*]

Judge ALLARD.

---

[*]  Sitting by assignment made pursuant to article IV, section 16 of the Alaska
Constitution and Administrative Rule 24(d).

Carrie D. Simants was thirty-three years old when she had sexual intercourse with R.H., a seventeen-year-old boy who was living in her home. At the time, R.H. had been adjudicated a delinquent, and Simants had agreed to oversee his compliance with his delinquency case plan. A jury therefore found that Simants was in a "position of authority" over R.H. and convicted her of one count of second-degree sexual abuse of a minor.[1] Simants was sentenced to 8 years with 3 years suspended (5 years to serve) and 10 years' probation for this offense.

On appeal, Simants challenges her sentence on three grounds. She asserts that the superior court erred by rejecting the two statutory mitigating factors she proposed at sentencing. She argues, in the alternative, that the court should have referred her case to the statewide three-judge sentencing panel for consideration of a sentence below the applicable presumptive range. Lastly, she challenges a condition of probation that could potentially preclude her from living with her own children after her release.

For the reasons explained below, we conclude that the superior court applied the wrong legal analyses when it rejected the two statutory mitigating factors and imposed the challenged probation condition. Accordingly, we vacate the probation condition and remand this case to the superior court for further proceedings consistent with this opinion. Because Simants may be resentenced, we do not reach the merits of her three-judge sentencing panel arguments at this time.

*Background facts and proceedings*

Seventeen-year-old R.H. was adjudicated a delinquent on a charge of criminal mischief. At the time of his adjudication, R.H. was living with Simants, whom

---

[1]  AS 11.41.436(a)(6).

he referred to as his "aunt," although the two were not related. Following his adjudication, R.H. was placed on probation and ordered to live with his mother until he turned eighteen years old.

R.H. left his mother's house within a few days and moved back in with Simants because he felt like his mother did not treat him with respect. He later testified that he preferred living with Simants because she "never came at [him] with authority" and did not set rules for him. R.H.'s probation officer met with R.H., his mother, and Simants. Because R.H.'s mother was planning to move out of town, R.H.'s probation officer agreed to allow R.H. to live with Simants. The probation officer developed a case plan for R.H., which was signed by R.H.'s mother and Simants.

About two weeks after R.H. moved back into Simants's house, the two began having sexual intercourse. This sexual relationship lasted for a few months, until R.H. decided to move out following an argument. During this time Simants became pregnant, and she told R.H. that he was the father.

R.H. did not believe the baby was his, and he told Simants so. Simants then sent R.H. text messages that he believed to be threatening, so he contacted the police about obtaining a no-contact order. R.H. told the police that his relationship with Simants had been sexual. R.H. then assisted the police in recording Simants's statements to R.H. under a *Glass* warrant.[2] In that recorded conversation, Simants admitted to having had sexual intercourse with R.H.

Simants was charged with three counts of sexual abuse of a minor in the second degree. Under AS 11.41.436(a)(6), a person is guilty of sexual abuse of a minor

---

[2] *See State v. Glass*, 583 P.2d 872 (Alaska 1978), *on rehearing*, 596 P.2d 10 (Alaska 1979) (holding that the Alaska Constitution requires police to obtain judicial authorization before electronically monitoring or recording a person's private conversations).

in the second degree if the person engages in sexual penetration with a sixteen- or seventeen-year-old while occupying "a position of authority in relation to the victim."

At trial, Simants disputed that she was in "a position of authority" in relation to R.H. She acknowledged that she had signed his probation case plan, but claimed that she had not participated in the development of the plan and had never asserted any authority over him. In response, the State argued that while Simants may have been a poor authority figure, she nevertheless voluntarily assumed a position of authority over R.H. by signing his probation plan.

The jury convicted Simants of one count of second-degree sexual abuse of a minor, but was unable to reach a decision as to the other two counts, which were later dismissed by the State.

At sentencing, Simants faced a presumptive range of 5 to 15 years for her offense.[3] Simants asked the superior court to impose a sentence below the presumptive range based on two statutory mitigating factors(1) AS 12.55.155(d)(9) — "the conduct constituting the offense was among the least serious conduct included in the definition of the offense"; and (2) AS 12.55.155(d)(12) — "the facts surrounding the commission of the offense and any previous offenses by the defendant establish that the harm caused by the defendant's conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment." In the alternative, Simants asked the superior court to refer her case to the statewide three-judge sentencing panel.[4]

The superior court rejected Simants's proposed mitigating factors and declined to refer the case to the three-judge panel. The court found, however, that jail

---

[3]   AS 12.55.125(i)(3)(A).

[4]   *See* AS 12.55.165; AS 12.55.175.

time was not needed to isolate or deter Simants; instead, rehabilitation should be the primary goal of Simants's sentence under the *Chaney* criteria, with community condemnation a secondary goal.[5]

The court imposed a sentence at the lowest end of the applicable presumptive range: 8 years with 3 years suspended, 5 years to serve, with 10 years of supervised felony probation.[6] As a result of her conviction, Simants is required to register as a sex offender for 15 years.[7]

Over Simants's objection, the superior court also imposed a special condition of probation prohibiting Simants from "resid[ing] in a dwelling in which a minor is residing or staying" unless she obtains "the permission of [her] probation officer, [her] sex offender treatment provider, and the parent/guardian of the minor." Simants objected to this condition on the ground that it could potentially prevent her from living with her own children, ages 15, 13, and 1. The court imposed the condition but encouraged Simants's attorney to "petition the court to revisit [the probation condition]" if this became an issue.

---

[5]   *See State v. Chaney*, 477 P.2d 441, 443-44 (Alaska 1970) (setting forth criteria to guide sentencing, including the seriousness of the offense; the relative need for rehabilitation, isolation, and deterrence; community condemnation and the reaffirmation of societal norms; and harm to and restoration of the victim and the community); *see also* AS 12.55.005 (codifying the *Chaney* sentencing factors).

[6]   *See* AS 12.55.125(i)(3)(A) (requiring presumptive range of 5 to 15 years for first felony offender convicted of second-degree sexual abuse of a minor); AS 12.55.125(o)(2) (requiring sentencing court to impose 3 years suspended time and 10 years probation for all class A and B felony sex offenses).

[7]   *See* AS 12.63.010(a); AS 12.63.020(a)(2).

*Why we conclude that a remand for further proceedings is needed on the two statutory mitigating factors*

A sentencing judge is authorized to impose a sentence below the applicable presumptive range if the judge finds a mitigating factor.[8] Here, Simants proposed two statutory mitigating factors, both of which were rejected by the superior court.

*The proposed (d)(9) mitigating factor*

To establish the "least serious" statutory mitigating factor under AS 12.55.155(d)(9), a defendant must prove by clear and convincing evidence that "the conduct constituting the offense was among the least serious conduct included in the definition of the offense." Application of this mitigator to a particular case does not mean that the case is somehow "not serious" or that the victim has not been harmed. Rather, the determination of the "seriousness" of the defendant's conduct is a relative one — the defendant's conduct is considered "among the least serious" only in contrast to the range of conduct included within the definition of the offense.[9] Indeed, the structure of presumptive sentencing presumes that, even for the most serious felonies subject to presumptive sentencing, there will necessarily be conduct that ranks "among the least serious," just as there will be conduct that ranks "among the most serious."[10]

In the current case, Simants was charged with sexual abuse of a minor in the second degree, a class B felony, for engaging in sexual penetration with R.H., a

---

[8]  AS 12.55.155(d).

[9]  AS 12.55.155(d)(9); *see, e.g., Michael v. State*, 115 P.3d 517, 521 (Alaska 2005) (Bryner, J., concurring) ("By any realistic measure, Michael's overall conduct ranks *among* the least serious within the class of defendants actually convicted of first-degree sexual assault.") (emphasis in original).

[10]  AS 12.55.155(c)(10); AS 12.55.155(d)(9).

seventeen-year-old, while she occupied a position of authority over him.[11]  The age of sexual consent in Alaska is sixteen; therefore, the sexual relations between R.H. and Simants would not have been criminal under Alaska law except for Simants's decision to voluntarily sign R.H.'s delinquency case plan and thereby assume a position of authority over him.

The prohibition against sexual contact with sixteen- and seventeen-year-olds by persons who occupy "positions of authority" relative to their victims was added to Alaska's sexual abuse laws in 1990.[12]  The legislative intent behind the prohibition was to ensure that young people were not subjected to sexual abuse by teachers, coaches, ministers, or other "substantially similar" adults in a position to exercise undue influence over them.[13]  The prohibition was premised on the recognition that while sixteen- or seventeen-year-olds might otherwise be considered old enough to consent to sexual activity, they remain vulnerable to sexual exploitation by people in positions of authority over them.

Here, however, the superior court found that while Simants occupied a "position of authority" over R.H., the exercise of authority was never connected with their sexual relationship.  The court specifically found that the State failed to demonstrate that Simants used her position of authority, either explicitly or implicitly, to commit or facilitate the sexual offense.

---

[11]  AS 11.41.436(a)(6)(b); *see also* AS 11.41.470(5) (position of authority means "an employer, youth leader, scout leader, coach, teacher, counselor, school administrator, religious leader, doctor, nurse, psychologist, guardian ad litem, babysitter, or a substantially similar position, and a police officer or probation officer").

[12]  *See* Ch. 151, § 2, SLA 1990.

[13]  *See* Letter of Intent for S.B. 355, 1990 House Journal 4199; 1990 Senate Journal 4220; *see also Wurthmann v. State*, 27 P.3d 762, 764 (Alaska App. 2001).

The court also found that R.H., who was close to eighteen years old, was "by all accounts and testimony a tremendously independent though troubled youth who had little respect for authority." The court noted that R.H. was described as a person "who basically did what he wanted when he wanted," and that R.H. did not appear to suffer from any particular psychological or physical vulnerabilities.

After making these findings, the superior court nevertheless rejected the proposed mitigator, concluding that this case did not qualify as "among the least serious [within its] class" because the sexual relationship between R.H. and Simants was not simply a one-time event but was instead an "ongoing thing." The court concluded that this factor took the case "out of the realm of least serious offense" because Simants had multiple opportunities to withdraw from a sexual relationship she knew was wrong and did not do so.

When we review a sentencing court's decision rejecting or accepting a statutory mitigating factor, we review the court's factual findings concerning the defendant's conduct for clear error.[14] Our determination of whether the mitigator applies given those facts, however, is a question of law that we review de novo.[15]

Here, we conclude that the court's factual findings regarding the nature of Simants's conduct are well-supported by the record and not clearly erroneous. However, these findings are seemingly inconsistent with the superior court's legal conclusion that the (d)(9) mitigator should not apply in this case. If Simants had used her position of authority, implicitly or explicitly, to facilitate her sexual relationship with R.H., we might agree with the trial court that the ongoing nature of the conduct could be a significant

---

[14] *Michael*, 115 P.3d at 519.

[15] *Id.*

factor in removing Simants's offense from the category of "among the least serious included in the definition of the offense,"[16] because the longer the relationship endured the more Simants would have exploited her position of authority and the more R.H. would have been harmed. But given the superior court's finding that the sexual relationship existed independent of Simants's position of authority, we disagree as a matter of law with the sentencing court's ruling that the "ongoing nature" of Simants's and R.H.'s sexual relationship was sufficient — standing alone — for the court to reject the "least serious" mitigator.

Given the apparent inconsistencies between the superior court's findings of fact with regard to this proposed mitigator and its conclusion of law, we remand this case to the superior court for reconsideration of this proposed mitigating factor.

*The proposed (d)(12) mitigating factor*

To establish the "consistently minor harm" statutory mitigating factor under AS 12.55.155(d)(12), a defendant must prove by clear and convincing evidence that "the facts surrounding the commission of the offense and any previous offenses by the defendant establish that the harm caused by the defendant's conduct is consistently minor and inconsistent with the imposition of a substantial period of imprisonment." Unlike the "least serious" mitigating factor, which is concerned primarily with the nature of the defendant's criminal conduct, this mitigating factor focuses solely on its consequences — not just the "actual physical injuries or property losses occasioned by the defendant's

---

[16]    *See Joseph v. State*, 315 P.3d 678, 684 (Alaska App. 2013).

criminal conduct, but also 'the risks ... [and the] disruption of the social fabric' that the defendant's criminal conduct entailed."[17]

The superior court rejected this proposed mitigator because Simants had a prior felony offense — a drug possession conviction from seventeen years earlier, when Simants was eighteen years old, for which Simants received 18 days of jail time. The superior court's remarks suggest that the court erroneously believed that, as a matter of law, a defendant who has been convicted of a felony cannot prove the (d)(12) mitigator.

We do not read AS 12.55.155(d)(12) so narrowly. We recognize that when the legislature declares that an offense is punishable as a felony, it has made a broad judgment that the offense is serious enough to warrant imposition of a substantial term of imprisonment. But we do not believe that the legislature intended the "consistently minor harm" mitigating factor to be unavailable to any offender who has a prior felony conviction.

The legislature created statutory mitigating factors because it recognized that presumptive sentencing, if rigidly applied, might lead to unfairness in particular cases.[18] We think it reasonable to infer from this statutory scheme that the legislature intended sentencing courts to assess the harm caused by a defendant's criminal conduct on a case-by-case basis, rather than based on a mechanical assessment of whether the defendant's conduct is punishable as a misdemeanor or felony offense.

This interpretation is supported by the language of AS 12.55.155(d)(12). Under the statute, to establish the "consistently minor harm" mitigator, the defendant must show not only that the harm caused by *past* crimes was consistently minor, but also

---

[17] *Id.* at 684-85 (quoting *Ison v. State*, 941 P.2d 195, 198 (Alaska App. 1997)).

[18] *See, e.g., Dancer v. State,* 715 P.2d 1174, 1178 (Alaska App. 1986) (discussing legislative history of presumptive sentencing).

that the harm caused by the defendant's *current* offense or offenses was minor. The defendant's current offense or offenses will always be a felony — because statutory mitigating factors only apply to presumptive sentencing, and presumptive sentencing only applies to felonies. We think it unlikely that the legislature would have worded the statute this way if it intended to limit the "consistently minor harm" mitigator to offenders who have no prior felony convictions.

This interpretation is also supported by the legislative history of the statute. In the commentary accompanying the "consistently minor harm" mitigator, the legislature provided one example of when this mitigator might apply "when the defendant has committed a number of felony property offenses, such as check forgeries, but they all involve relatively small amounts of money."[19] Clearly, the legislature would not have used this example if it intended to preclude the application of this mitigating factor to offenders with one or more prior felony convictions.

We conclude that the superior court rejected the "consistently minor harm" mitigator for an improper reason. On remand, therefore, we direct the superior court to reconsider under the correct legal standard whether Simants established this mitigating factor.

*Why we vacate the special condition of probation barring Simants from residing in a home where minors are present*

Simants challenges a special condition of her probation that prohibits her from residing in a home where a minor is present without the permission of her probation officer, her sex offender treatment provider, and the minor's parent or guardian. Simants

---

[19]    *Joseph*, 315 P.3d at 685 (quoting 1980 Senate Journal Supp. No. 44 at 26).

argues that this probation condition is unconstitutional as applied to her because it could prevent her from living with her own minor children.

To be valid, a condition of probation must be "reasonably related to the rehabilitation of the offender and the protection of the public" and must "not be unduly restrictive of liberty."[20] A probation condition that infringes a defendant's constitutional rights by restricting the defendant's family associations is reviewed with special scrutiny.[21] The court must find that such a condition is both "reasonably related to the rehabilitation of the offender and protection of the public" and "narrowly tailored to avoid unnecessary interference with [the defendant's] family relationships."[22] In this analysis, the court must affirmatively consider, and have good reason for rejecting, any less restrictive alternatives.[23]

The superior court did not apply this heightened level of scrutiny in Simants's case. The judge asked the probation officer who proposed this condition of probation whether the officer intended to preclude Simants from living with her own children, and the probation officer said that he did — at least until a sex offender treatment provider determined that it was safe for Simants to live with her children. The probation officer conceded that this determination would not necessarily be made until after Simants was released from prison and already on probation.

---

[20] *Diorec v. State*, 295 P.3d 409, 412 (Alaska App. 2013) (quoting *Roman v. State*, 510 P.2d 1235, 1240 (Alaska 1977)).

[21] *Diorec*, 295 P.3d. at 414.

[22] *Id.*; *see also Hinson v. State*, 199 P.3d 1166, 1174-75 (Alaska App. 2008); *Dawson v. State*, 894 P.2d 672, 680-81 (Alaska App. 1995); *Roman*, 570 P.2d at 1240-41.

[23] *Peratrovich v. State*, 903 P.2d 1071, 1079 (Alaska App.1995); *see also Diorec*, 295 P.3d at 414; *Dawson*, 894 P.2d at 680-81.

In other words, the record shows that the superior court imposed this condition of probation based solely on the probation officer's uncorroborated speculation that, because Simants engaged in a consensual sexual relationship with a seventeen-year-old boy, she might also pose a sexual danger to her own children. The superior court apparently adopted the probation officer's view that Simants's relationship with her children should therefore be restricted until it was affirmatively established that Simants did *not* pose a danger to her children.

This approach is the opposite of what the law requires. Given the constitutional importance of a person's right to maintain familial relationships, the superior court could not impose this kind of restriction unless the State affirmatively demonstrated good reason to believe that Simants would, in fact, pose a danger to her children when she was released from prison. Nothing in the current record supports such a conclusion.

We accordingly vacate this condition of Simants's probation to the extent that it applies to her own children (the specific ground on which the condition was challenged below and on appeal).

*Conclusion*

We REMAND this case to the superior court for reconsideration of whether Simants established the proposed statutory mitigating factors of "least serious conduct" and "consistently minor harm." If the superior court concludes that Simants established one or both mitigating factors and that a mitigated sentence is called for, it shall resentence Simants. Our resolution of these issues makes it unnecessary for us to address at this juncture Simants's alternative claim that the superior court erred by refusing to refer her case to the statewide three-judge panel.

We VACATE the special condition of probation limiting Simants from residing in a home where a minor is present to the extent that the condition bars her from living with her own children. If the State wishes to renew its request for a probation condition that restricts Simants's contact with her children, the State must affirmatively show (1) that there is good reason to believe Simants will pose a danger to her children when she is released from prison, and (2) that the State's proposed condition of probation is narrowly tailored to avoid unnecessary interference with Simants's relationship with her children.

We retain jurisdiction.