NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

MICHAEL H. GLASGOW,

                              Appellant,

             v.

STATE OF ALASKA,

                              Appellee.

Court of Appeals No. A-11270
Trial Court No. 3HO-11-480 CR

O P I N I O N

No. 2469 — August 21, 2015

Appeal from the Superior Court, Third Judicial District, Homer, Charles T. Huguelet, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Kossler, Judges.

Judge KOSSLER.

A jury convicted Michael H. Glasgow of third-degree assault after he pointed a knife at Timothy Whitehead following a confrontation about Whitehead's unleashed dogs.

At trial, Glasgow requested jury instructions on the City of Homer's animal control laws and the Alaska statutes that authorize the killing, in certain circumstances, of an "at large" dog. We conclude that the trial court properly denied Glasgow's request for these instructions.

The trial court also imposed a special condition of probation that prohibited Glasgow from applying for or possessing a medical marijuana card. We conclude that the condition is overbroad, and we accordingly vacate the condition.

*Background facts*

In August 2011, Timothy Whitehead and his son were walking on a bike path in Homer with the family's dogs. Two of the dogs were not leashed. Glasgow was on his bike, riding toward Whitehead. One of the dogs approached Glasgow, and Glasgow pulled out a knife and began jabbing it at the dog. Glasgow then continued riding down the path and yelled at Whitehead to put his dogs on a leash. Whitehead apologized and said he would leash the dogs.

After Glasgow rode past Whitehead and his son, Whitehead yelled to his son something along the lines of: "Just shut up, don't worry. Some people do this." Glasgow yelled back, "You want some of this? You want to go?," to which Whitehead responded, "Shut up. I'm talking to my kid." Glasgow then stopped, got off his bike, and walked back to Whitehead, continuing to yell at him to put his dogs on a leash. Whitehead and his son both testified at the later trial that Glasgow had a knife still in his hand, and they both testified that they thought Glasgow was going to stab Whitehead. Instead, Glasgow walked back to his bike and rode away.

Glasgow was indicted for third-degree assault. At his trial, Glasgow's defense was that he did not have the knife in his hand when he walked back to Whitehead. The jury rejected this defense and convicted him of third-degree assault.

*Why we conclude that the trial court properly denied Glasgow's proposed jury instructions*

At the start of Glasgow's trial, defense counsel asked the court to instruct the jury on various Homer code provisions regarding the control of animals, as well as state statutes authorizing a person in certain circumstances to kill a dog that is running at large.[1] Defense counsel argued that Whitehead's dogs "were frightening [his] client" and that Whitehead's "allowing his dogs to roam free" constituted "contributory behavior" that led Glasgow to initially pull out his knife. The court declined to instruct the jury on these laws.

Glasgow claims on appeal that the trial court's refusal to give his proposed jury instructions prevented him from fully presenting his defense, in violation of his right to due process.

While Glasgow is correct that a defendant has a due process right to present his case,[2] this right does not entitle him to jury instructions on matters that do not relate to any legally cognizable defense or any disputed facts in the case.[3] A trial court does not abuse its discretion by declining to instruct the jury on statutes or other laws not applicable to the controversy in question.[4]

It was undisputed at trial that two of Whitehead's dogs were not leashed. The statutes and municipal laws that Glasgow cited in support of his proposed instructions specify how animals are to be controlled and authorize a person in certain

---

[1]     AS 03.55.010-.030; Homer City Code §§ 20.04.020, 20.08.010(a), 20.08.030(c).

[2]     *Smithart v. State*, 988 P.2d 583, 586, 588 (Alaska 1999).

[3]     *Ostlund v. State*, 51 P.3d 938, 942-43 (Alaska App. 2002).

[4]     *See, e.g.*, *Shane v. Rhines*, 672 P.2d 895, 901 (Alaska 1983) ("The trial court did not abuse its discretion by refusing to instruct the jury on statutes not applicable to the controversy.").

circumstances to kill a dog that is running at large.[5] But these laws do not authorize a person to attack the dog owner when he is attempting to restrain his animals.

In this case, Glasgow and Whitehead had already passed each other, heading in opposite directions on the bike path, when Glasgow stopped, got off his bike, and walked back to Whitehead with a knife in his hand. Glasgow did not seek an instruction on self-defense. And to the extent that Glasgow sought to argue that Whitehead was somehow at fault for failing to restrain his dogs, this would not be a justification for an assault.[6] The trial court's refusal to instruct the jury on this issue was correct and did not infringe Glasgow's right to present a defense.

*Why we vacate the special condition of probation*

The author of the presentence report recommended that the court impose various conditions of probation, including that Glasgow "not possess, apply for, or obtain a medical marijuana card." In response, Glasgow filed a pro se pleading in which he provided information about his rheumatoid arthritis, hypoglycemia, and anxiety. Glasgow stated that he had been prescribed medical cannabis for these conditions and was a licensed medical cannabis patient in California.

At sentencing, the court ordered Glasgow to participate in both a substance abuse evaluation and a mental health evaluation as part of his probation. The court also imposed the special condition of probation that prohibited Glasgow from possessing, applying for, or obtaining a medical marijuana card. In support of this special condition, the judge stated, "I think what we're dealing with is somewhat related to a mental illness

---

[5] *See* AS 03.55.010-.030; Homer City Code §§ 20.04.020, 20.08.010(a), 20.08.030(c).

[6] *See Wren v. State*, 577 P.2d 235, 238-39 (Alaska 1978); *Winters v. State*, 1990 WL 10513257, at *1 (Alaska App. Mar. 14, 1990) (unpublished).

and possibly related to marijuana use, I don't know." The judge stated "to fully evaluate Mr. Glasgow I think he needs to be off the marijuana, and a prescription from a California doctor under these circumstances isn't going to cut it." The judge continued:

> [At] some point if Alaska license[d] MDs and psychiatrists all agree that that's the only way to treat [Mr. Glasgow,] then I could reconsider it, but I'm going to want him clean and sober and fully evaluated.

On appeal, Glasgow challenges this special condition of probation. Glasgow contends that the condition is not narrowly tailored to avoid unnecessary interference with his constitutional right to privacy in making independent medical decisions in consultation with a physician.

The State argues that Glasgow failed to preserve this issue for appellate review. The State notes that Glasgow's attorney never objected to the condition and that Glasgow did not have co-counsel status that would allow him to file his pro se pleading. But Glasgow's pro se pleading contained both an offer of proof and an objection to the special condition of probation, which was then ruled upon by the court. Despite the procedural irregularity of Glasgow's pleading and the court's consideration of it, we conclude that the issue is preserved for our review.[7]

A condition of probation must reasonably relate to the rehabilitation of the offender and the protection of the public, while not unduly restricting the offender's liberty.[8] A probation condition that infringes a constitutional right of a defendant is

---

[7] *Cf. Romero v. State*, 792 P.2d 679, 680 (Alaska App. 1990) (declining to find forfeiture where the trial court considered the claim on its merits despite its untimeliness); *Abruska v. State*, 705 P.2d 1261, 1271-72 (Alaska App. 1985) (same; recognizing a trial court's discretion to hear untimely motions).

[8] *Simants v. State*, 329 P.3d 1033, 1038 (Alaska App. 2014); *Diorec v. State*, 295 P.3d 409, 412 (Alaska App. 2013).

reviewed with special scrutiny: the court must ensure that the condition is narrowly tailored to avoid unnecessary interference with the constitutional right at issue, and the court must affirmatively consider, and have good reason for rejecting, any less restrictive alternatives.[9]

The right to make independent medical choices in consultation with a physician is afforded constitutional privacy protection.[10] That right applies to those who participate or intend to participate in Alaska's medical marijuana registry program.[11] A person may apply for a medical marijuana card when, in the context of a bona fide physician-patient relationship, a physician has diagnosed the person with a debilitating medical condition for which the medical use of marijuana might be beneficial treatment.[12] Against this background, it is clear that the superior court prohibiting Glasgow from applying for or possessing a marijuana card directly impacts his constitutional right to make independent medical choices in consultation with a physician.

There may be cases where a trial court can validly restrict a defendant from the medical use of marijuana while on probation. For example, in *People v. Leal*, a probation condition prohibiting the defendant's possession of marijuana authorized by a medical marijuana card was upheld where the defendant had previously used his card

---

[9] *See Simants*, 329 P.3d at 1038-39; *Dawson v. State*, 894 P.2d 672, 680-81 (Alaska App. 1995).

[10] *Huffman v. State*, 204 P.3d 339, 346 (Alaska 2009) ("[T]he right to make decisions about medical treatments for oneself ... is a fundamental liberty and privacy right in Alaska.").

[11] *See Rollins v. Ulmer*, 15 P.3d 749, 752-54 (Alaska 2001).

[12] *See* AS 17.37.010(c)(1).

as "a front for illegal sales of marijuana."[13]  But here, the court articulated only a single concern that could potentially justify a restriction on Glasgow's medical use of marijuana:  the court's desire to have Glasgow "clean and sober" when he was evaluated for substance abuse and mental health issues (as was required by other conditions of Glasgow's probation).  Even if this concern might conceivably justify a temporary suspension of Glasgow's use of medical marijuana — an issue we do not decide — this concern does not justify a prohibition lasting the entire three-year term of Glasgow's probation.

As noted above, special scrutiny is applied to probation conditions that implicate constitutional rights to ensure that they are narrowly tailored and that less restrictive alternatives have been affirmatively considered and rejected. The broad scope of the condition here is not narrowly tailored to the superior court's stated purpose, nor does it appear that the superior court affirmatively considered less restrictive alternatives to the categorical prohibition it imposed here.  If the superior court wishes to impose a probation condition restricting Glasgow from a medical marijuana card, then it must first apply the analysis we have outlined above.

*Conclusion*

We AFFIRM Glasgow's conviction for third-degree assault, but we VACATE the special condition of probation that prohibits Glasgow from applying for or obtaining a medical marijuana card.

---

[13]  *People v. Leal*, 210 Cal.App.4th 829, 149 Cal.Rprtr.3d 9, 21 (Cal. App. 2012).