NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JOSE ALFREDO GALINDO,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12870
Trial Court No. 4FA-13-03428 CR

O P I N I O N

No. 2690 — January 29, 2021

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Beth Goldstein, Acting Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

Following a jury trial, Jose Alfredo Galindo was convicted of first-degree sexual assault for penetrating J.C.'s vagina with a plastic bottle without her consent and second-degree criminal trespass for unlawfully entering a building after the incident in

an attempt to avoid the police.[1]  Galindo now appeals his conviction and sentence, and he challenges several conditions of his probation.

*Why we conclude that there was sufficient evidence to support Galindo's conviction for first-degree sexual assault*

Galindo first argues that there was insufficient evidence presented at trial to convict him of first-degree sexual assault.  To prove this charge, the State was required to establish that (1) Galindo knowingly engaged in an act of sexual penetration of J.C., (2) that the sexual penetration was "without consent," as that phrase is defined in AS 11.41.470(8)(A), and (3) that Galindo recklessly disregarded J.C.'s lack of consent.[2]

On appeal, Galindo asserts that the State failed to prove that the penetration was without J.C.'s consent and that Galindo recklessly disregarded J.C.'s lack of consent.  Galindo and J.C. had a prior dating and sexual relationship, and at trial, Galindo argued that the act of sexual penetration was consensual.  Galindo argues that J.C. was not a credible witness and that her statements were either inconsistent or not believable.

But when this Court reviews the sufficiency of the evidence to support a conviction, we do not weigh the credibility of witnesses, as witness credibility is exclusively a question for the jury.[3]  Rather, we view the evidence, and all reasonable

---

[1]  AS 11.41.410(a)(1) and AS 11.46.330(a)(1), respectively.

[2]  AS 11.41.410(a)(1); AS 11.41.470(8)(A) (providing that an act of sexual penetration is "without consent" if "a person[,] with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of death, imminent physical injury, or kidnapping"); *see also Inga v. State*, 440 P.3d 345, 349 (Alaska App. 2019) ("[T]o establish that sexual activity occurred without consent, the State must prove that the victim was not willing to engage in the sexual activity, and that the victim was coerced by force or by the threat of force.").

[3]  *Morrell v. State*, 216 P.3d 574, 576 (Alaska App. 2009) (citing *Ratliff v. State*, 798

(continued...)

inferences from that evidence, in the light most favorable to upholding the jury's verdict. We then ask whether a reasonable juror could have concluded that the State had proved its case beyond a reasonable doubt.[4]

Viewing the evidence, including J.C.'s testimony, in the light most favorable to upholding the jury's verdict, we conclude that there was sufficient evidence to support Galindo's conviction. J.C. gave a detailed description of the alleged assault. She testified that Galindo forced her down on a bed and positioned himself on top of her while he inserted something cold into her vagina. According to J.C., she jerked herself up and looked down to discover that Galindo had shoved a plastic bottle into her vagina. J.C. started yelling at Galindo, threw the bottle across the room, jumped off the bed, and grabbed her clothes. J.C. then left the room and ran down the stairs, screaming for help.

A third-party witness who was sleeping downstairs testified that he awoke to J.C.'s screaming and her footsteps on the stairs. When J.C. got downstairs, she was agitated and distressed and stated that Galindo had "raped her with a bottle." J.C. called 911, and when the police responded, she showed them the bottle that Galindo had used to penetrate her. Later, in multiple calls to J.C. from the jail, Galindo admitted to assaulting J.C., repeatedly apologized to her, and tried to convince her not to testify.

Given this evidence, a reasonable juror could conclude beyond a reasonable doubt that Galindo penetrated J.C. without consent, and that Galindo recklessly disregarded J.C.'s lack of consent. We therefore reject Galindo's claim of insufficient evidence, and we affirm Galindo's conviction.

---

[3] (...continued)
P.2d 1288, 1291 (Alaska App. 1990)); *Daniels v. State*, 767 P.2d 1163, 1167 (Alaska App. 1989).

[4] *Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012); *Johnson v. State*, 188 P.3d 700, 702 (Alaska App. 2008).

*Why we reject Galindo's excessive sentence claim*

As a first felony offender, Galindo was subject to a presumptive sentence of 20 to 30 years for his first-degree sexual assault conviction.[5] Because the jury found an aggravating factor — that Galindo had committed a crime against a person with whom he had a dating relationship or sexual relationship[6] — the court had the authority to sentence Galindo up to the maximum sentence of 99 years.[7] Galindo faced a maximum sentence of 10 days for the second-degree criminal trespass conviction.[8]

The court sentenced Galindo to 35 years with 7 years suspended for the first-degree sexual assault and 10 days for the second-degree criminal trespass, with the sentences to be served concurrently — a composite sentence of 35 years with 7 years suspended (28 years to serve).

Galindo now appeals his sentence as excessive. Galindo challenges the superior court's findings that he had a low likelihood of rehabilitation and needed a significant period of isolation based on his seven prior misdemeanor domestic violence convictions and multiple probation violations and prison disciplinary infractions.[9] He argues that a shorter sentence would have adequately addressed deterrence and community condemnation.[10] Galindo also contends that the court should not have given any weight to the aggravating factor.

---

[5]   AS 12.55.125(i)(1)(A)(ii).

[6]   AS 12.55.155(c)(18)(D).

[7]   AS 12.55.125(i)(1).

[8]   Former AS 12.55.135(b) (2017).

[9]   *See* AS 12.55.005.

[10]   *See id.*

But the sentencing judge bears primary responsibility for determining the priority and relationship of the various sentencing objectives in a given case.[11] The sentencing judge also has discretion to determine the weight to give an aggravating or mitigating factor.[12] We will not disturb a judge's sentencing decision unless it is clearly mistaken.[13]

At the time of the offense in this case, Galindo was forty-three years old. The court found that, although he did not have any prior felony convictions, Galindo had "a disturbing criminal history" that was "marked primarily by domestic violence against intimate partners." In particular, Galindo had four prior convictions for violating a protective order and three prior convictions for fourth-degree assault, including one against J.C. The court also noted that Galindo had multiple prior probation violations, and was on probation and conditions of release at the time he committed the offense in this case. As a result, the court found that Galindo was "a persistent threat to the community."

The court engaged in a thorough analysis of the *Chaney* criteria, and ultimately determined that the sentence imposed was necessary for public safety and to reaffirm societal norms and the seriousness of the offense.[14]

---

[11] *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973).

[12] *Machado v. State*, 797 P.2d 677, 689 (Alaska App. 1990).

[13] *Pickard v. State*, 965 P.2d 755, 760 (Alaska App. 1998) (citing *Nicholas v. State*, 477 P.2d 447, 448-49 (Alaska 1970)).

[14] *See State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970); AS 12.55.005.

When we review an excessive sentence claim, we independently examine the record to determine whether the sentence is clearly mistaken.[15] This standard contemplates that "reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence" and that a reviewing court will only modify a sentence if it falls outside "a permissible range of reasonable sentences."[16]

While some judges may have imposed a lower sentence, we cannot say that the relative weight that the court ascribed to each of the sentencing criteria, or the ultimate sentence imposed by the court, was clearly mistaken.

*Why we reverse the portion of Special Condition of Probation No. 5 that authorizes residential treatment if recommended*

Special Condition of Probation No. 5 requires Galindo, *inter alia*, to enroll in a residential mental health or substance abuse program, if such a program is "determined [to be] necessary by an appropriate mental health or substance abuse professional," and to stay in the residential program "for a length of time determined necessary by the appropriate professionals." Galindo argues that this portion of the condition is illegal because it fails to set a maximum term for residential treatment. We agree with Galindo that the failure to set an upper limit for the residential treatment

---

[15] *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).

[16] *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997) (citations and internal quotations omitted).

provision is contrary to both statute and case law,[17] and thus plainly erroneous notwithstanding his failure to object in the trial court to this portion of the condition.[18]

The State concedes that the omission of a maximum period of residential treatment was erroneous, but argues that the proper remedy is to remand Galindo's case to the superior court for further consideration of the residential treatment condition. But once a sentence has been meaningfully imposed, the imposition of a maximum term for residential treatment constitutes an illegal increase in the defendant's sentence in violation of the prohibition against double jeopardy.[19] In *Christensen v. State*, we suggested that there might be an exception to this rule if the imposition of residential treatment was integral to the trial court's sentencing decision.[20] But the record in this case does not demonstrate that the residential treatment provision played a vital role in the superior court's overall sentencing decision.

We therefore reverse the portion of Special Condition No. 5 authorizing residential treatment.[21]

---

[17] *See* AS 12.55.100(c) (providing that a program of inpatient treatment must be authorized, and may not exceed a maximum term of inpatient treatment specified, in the judgment); *Christensen v. State*, 844 P.2d 557, 558-59 (Alaska App. 1993) (holding that a probation condition requiring residential treatment if recommended by a substance abuse evaluation was illegal because it failed to set a maximum period for such treatment).

[18] *See State v. Ranstead*, 421 P.3d 15, 24 (Alaska 2018) ("[A]n illegal condition of probation is one that is substantively erroneous — that is, actually contrary to *Roman* or other applicable law.").

[19] *Christensen*, 844 P.2d at 558-59; *see also Dodge v. Anchorage*, 877 P.2d 270, 272 (Alaska App. 1994).

[20] *Christensen*, 844 P.2d at 559.

[21] *See Luke v. State*, 2018 WL 4490908, at *4 (Alaska App. Sept. 19, 2018) (unpublished); *Daley v. State*, 2018 WL 4144978, at *2 (Alaska App. Aug. 29, 2018)
(continued...)

*Galindo's remaining challenges to his probation conditions*

Galindo challenges four additional probation conditions. Because Galindo did not object to these conditions in the trial court, he must now show plain error.[22]

Each of the challenged conditions implicates Galindo's constitutional rights. When a probation condition implicates a defendant's constitutional rights, a court must apply special scrutiny to ensure that the condition is "narrowly tailored to avoid unnecessary interference with the constitutional right at issue."[23] Accordingly, a court may not impose such a condition based solely on the fact that the defendant was convicted of a certain category of crime; rather, the court must "affirmatively consider and have good reason for rejecting lesser restrictions."[24]

We have reviewed the four conditions challenged by Galindo. Although Galindo did not object to the conditions in the trial court, it is clear that each of the conditions raises obvious concerns — either because the record is plainly deficient to support the condition,[25] or because there are obviously less restrictive alternatives to the

---

[21] (...continued) (unpublished).

[22] *Ranstead*, 421 P.3d at 23.

[23] *Glasgow v. State*, 355 P.3d 597, 600 (Alaska App. 2015); *see also Simants v. State*, 329 P.3d 1033, 1038-39 (Alaska App. 2014); *Diorec v. State*, 295 P.3d 409, 412 (Alaska App. 2013).

[24] *Peratrovich v. State*, 903 P.2d 1071, 1079 (Alaska App. 1995); *see also Dawson v. State*, 894 P.2d 672, 680-81 (Alaska App. 1995).

[25] *See, e.g.*, *Hauge v. State*, 2019 WL 4464683, at *5 (Alaska App. Sept. 18, 2019) (unpublished) (directing the trial court to reconsider a probation condition that precluded the defendant from possessing a firearm, even in the absence of any objection, because the record was "plainly devoid" of any support for the condition in that case).

challenged condition.[26]  We therefore remand for reconsideration of all four of the conditions.

*Special Condition No. 3*:  This probation condition requires Galindo to actively participate in Department of Corrections-approved programming as directed by his probation officer and abide by all conditions of the treatment program, which may include plethysmograph assessment.  Galindo challenges the inclusion of the plethysmograph assessment, arguing that the use of such an invasive test implicates Galindo's liberty interests and should be vacated because Galindo is already subject to less restrictive testing like polygraph examinations.

Plethysmograph testing is a procedure that "involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses."[27]  As the Ninth Circuit has noted, plethysmograph testing "not only encompasses a physical intrusion but a mental one, involving not only a measure of the subject's genitalia but a probing of his innermost thoughts as well."[28]  We have previously held that plethysmograph testing is sufficiently intrusive and

---

[26]  *See, e.g.*, *Powell v. State*, 2018 WL 3660226, at *2-3 (Alaska App. Aug. 1, 2018) (unpublished) (directing the trial court to reconsider a probation condition that limited the defendant's contact with his mother and brother, even in the absence of any objection, when it was readily apparent that reasonable, lesser restrictions were available).

[27]  *United States v. Weber*, 451 F.3d 552, 554 (9th Cir. 2006) (internal quotations omitted).

[28]  *Id.* at 562-63 (citation omitted).

demeaning as to implicate a liberty interest, and we have repeatedly vacated this condition, or remanded for application of special scrutiny.[29]

The State acknowledges that the current record is inadequate to support the imposition of plethysmograph assessment, but given Galindo's failure to object in the superior court, the State argues that we should allow the superior court to reconsider this portion of the condition, applying special scrutiny. Although we agree that a remand is appropriate under these circumstances, we question whether such an intrusive requirement could ever satisfy special scrutiny.[30] It is also unclear whether Alaska currently employs such testing in its supervision of sex offenders, an issue that the court may wish to address on remand.

*Special Condition No. 6*: This probation condition requires Galindo to "comply with [the] use of prescribed medications, if any." Galindo argues that there is no indication in the record that he has a history of not taking or abusing prescription medication, and thus this condition has no connection to his convictions or to his rehabilitation. Galindo also argues that the condition is overbroad, since it requires him to take any prescribed medication, regardless of its purpose, and that it is unconstitutional because it lacks any judicial oversight.

---

[29] *See, e.g.*, *Gardner v. State*, 2018 WL 6418086, at *4 (Alaska App. Dec. 5, 2018) (unpublished); *Luke v. State*, 2018 WL 4490908, at *4 (Alaska App. Sept. 19, 2018) (unpublished); *Daley v. State*, 2018 WL 4144978, at *1 (Alaska App. Aug. 29, 2018) (unpublished); *Giddings v. State*, 2018 WL 3301624, at *4-5 (Alaska App. July 5, 2018) (unpublished); *Kon v. State*, 2018 WL 480454, at *5 (Alaska App. Jan. 17, 2018) (unpublished).

[30] *See, e.g.*, *United States v. McLaurin*, 731 F.3d 258, 261-62 (2d Cir. 2013) (vacating a plethysmography condition because the procedure was not "narrowly tailored to serve a compelling government interest" and noting that "[t]here is a line at which the government must stop. Penile plethysmography testing crosses it.") (internal quotations omitted).

We have repeatedly vacated or remanded similar conditions — either because they lacked any factual grounding in the record demonstrating that a particular medication was necessary to facilitate a defendant's rehabilitation[31] or because the condition failed to include a mechanism for judicial review of the forced medication.[32]

The State concedes that the record is inadequate to support this condition, but requests an opportunity to present evidence and argument in support of the condition on remand. Given the absence of an objection in the trial court, we conclude that it is appropriate to remand this condition to the superior court to afford the State an opportunity to present evidence in support of the condition and — if the State elects to present evidence — for the court to apply special scrutiny to the proposed condition.[33]

We note, however, that to the extent Special Condition No. 6 requires Galindo to take *any* medication that is prescribed to him, without any connection to his

[31] *See Dere v. State*, 444 P.3d 204, 226 (Alaska App. 2019) (noting that the sentencing judge failed to take any testimony or enter findings to justify the need for forced medication); *see also Abarca v. State*, 2020 WL 7238380, at *1-2 (Alaska App. Dec. 9, 2020) (unpublished).

[32] *See Love v. State*, 436 P.3d 1058, 1060-61 (Alaska 2018) (discussing *Kozevnikoff v. State*, 433 P.3d 546, 547-48 (Alaska App. 2018)); *see also Dere*, 444 P.3d at 226; *Huff v. State*, 2019 WL 2451009, at *3-4 (Alaska App. June 12, 2019) (unpublished); *Clifton v. State*, 2019 WL 11093436, at *2-3 (Alaska App. Feb. 6, 2019) (unpublished); *Wilson v. State*, 2018 WL 4492289, at *3 (Alaska App. Sept. 19, 2018) (unpublished).

[33] *See Glasgow v. State*, 355 P.3d 597, 600 (Alaska App. 2015) (recognizing the right to make independent medical choices and the need to narrowly tailor probation conditions related to medical treatment so as to not infringe on this right unnecessarily); *see also Huffman v. State*, 204 P.3d 339, 346 (Alaska 2009) (holding that "the right to make decisions about medical treatments for oneself . . . is a fundamental liberty and privacy right in Alaska"); *Rollins v. Ulmer*, 15 P.3d 749, 752, 754 (Alaska 2001) (recognizing a "constitutional right to make independent medical choices," grounded in the right to privacy).

rehabilitation, it cannot survive special scrutiny.[34] Over the course of a probationer's supervision, the probationer may make numerous medical decisions that are unrelated to his crime or to his potential for future criminality; these types of decisions should not subject the probationer to incarceration for failing to follow medical advice.[35]

To the extent the condition merely precludes Galindo from *abusing* any prescribed medication that he elects to take, there is no evidence currently in the record to suggest that Galindo has a history of not taking or abusing prescription medication, or that such a condition is otherwise reasonably related to his rehabilitation or to the protection of the public.[36]

If the superior court determines on remand that a modified version of this condition is appropriate and necessary, the court should clarify the meaning of the condition and provide a clear mechanism for judicial review prior to the compelled administration of any medication.[37]

---

[34] *See Baker v. State*, 2003 WL 21663992, at *1-2 (Alaska App. July 16, 2003) (unpublished) (vacating a probation condition requiring the defendant to take any medications prescribed by a licensed practitioner as there was no evidence in the record that the condition would protect the public or serve to rehabilitate the defendant).

[35] *See, e.g.*, *In re Luis F.*, 177 Cal.App.4th 176, 184, 99 Cal.Rptr.3d 174, 181 (Cal. App. 2009) ("We agree with Luis that if the medication requirement were intended to subject him to future incarceration for failing to treat his toenail fungus as prescribed by a doctor, it would be impermissibly overbroad — not to mention unreasonable and arbitrary.").

[36] *See Bedwell v. State*, 2018 WL 2277363, at *8 (Alaska App. May 16, 2018) (unpublished).

[37] *See Dere v. State*, 444 P.3d 204, 226 (Alaska App. 2019) (citing *Kozevnikoff v. State*, 433 P.3d 546 (Alaska App. 2018)).

*Special Conditions Nos. 13 & 14*:  Special Condition No. 13 prohibits Galindo from possessing any sexually explicit material without prior permission of the probation office and Galindo's sex offender treatment provider.  Special Condition No. 14 requires Galindo to submit to a search for any such material.  "Sexually explicit material" is defined as "materials depicting conduct set forth in AS 11.41.455(a), regardless of whether the conduct depicted involves adults or minors."

The court's reliance on AS 11.41.455(a) to define "sexually explicit material" appears to be an attempt to comply with our decision in *Diorec v. State*, a case in which the defendant was convicted of unlawful exploitation of a minor.[38]  In *Diorec*, we held that the term "sexually explicit material" in a similar probation condition was unconstitutionally vague, and we directed the superior court to revise the condition to provide the defendant with constitutionally adequate notice of the materials he was prohibited from possessing.[39]  In doing so, we suggested that the definition set out in AS 11.41.455(a) — which establishes the crime of unlawful exploitation of a minor and contains a list of sexual conduct involving a child under eighteen years of age — could provide a useful reference point.[40]

At the same time, since *Diorec*, we have also recognized that when the definition set out in AS 11.41.455(a) is expanded to include adults, it is "likely to include depictions of sexual activity . . . that '[are] now relatively commonplace within

---

[38]  *Diorec v. State*, 295 P.3d 409 (Alaska App. 2013).

[39]  *Id.* at 417.

[40]  *Id.* at 417-18.  Alaska Statute 11.41.455(a) — the crime of unlawful exploitation of a minor — refers to the following actual or simulated conduct engaged in by a child under 18 years of age:  (1) sexual penetration; (2) the lewd touching of another person's genitals, anus, or breast; (3) the lewd touching by another person of the child's genitals, anus, or breast; (4) masturbation; (5) bestiality; (6) the lewd exhibition of the child's genitals; and (7) sexual masochism or sadism.

mainstream media, cable television shows, and movies.'"[41]  This is potentially problematic because the right to possess sexually explicit material involving adults is constitutionally protected under the First Amendment.[42]

Galindo has been convicted of a crime against an adult.  And Special Conditions Nos. 13 and 14 — which restrict Galindo's possession of "sexually explicit material" — define this phrase by reference to a statute that captures conduct involving minors, but the definition has been expanded to include conduct involving adults.  These conditions therefore implicate the overbreadth concerns we have previously identified.

The State contends that the conditions are appropriate because Galindo was convicted of a sexual felony.  In addition, the State notes that J.C. testified at trial that — when she announced that she was calling the police — Galindo told her that he had taken intimate photographs of her without her knowledge, and he threatened to send them to her family members and post them online if she reported the sexual assault.  This evidence might support a more restrictive condition — for example, a condition prohibiting Galindo from taking or distributing sexually explicit photos or videos.  But there is no evidence currently in the record that Galindo's rehabilitation would be

[41]  *Whiting v. State*, 2014 WL 6713200, at *2 (Alaska App. Nov. 26, 2014) (unpublished) (quoting *Johnston v. State*, 2013 WL 4780812, at *3 (Alaska App. Sept. 4, 2013) (unpublished)).

[42]  *See United States v. Williams*, 553 U.S. 285, 288 (2008) (right to possess sexually explicit material involving adults); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240 (2002) ("As a general rule, pornography can be banned only if obscene, but . . . pornography showing minors can be proscribed whether or not the images are obscene" under the Court's definition of obscenity.); *Smith v. State*, 349 P.3d 1087, 1094 (Alaska App. 2015) (recognizing that probation conditions limiting the defendant's access to sexually explicit material potentially infringed on the defendant's First Amendment rights); *see also Ackerman v. State*, 2019 WL 856724, at *11 (Alaska App. Feb. 20, 2019) (unpublished); *Johnston*, 2013 WL 4780812, at *2; *Timm v. State*, 2000 WL 1745221, at *3 (Alaska App. Nov. 29, 2000) (unpublished).

hampered by possessing or viewing the type of mainstream media or images that the broad definition of "sexually explicit material" in these conditions seemingly includes.

We therefore remand Special Conditions Nos. 13 and 14 for the superior court to determine whether the conditions are reasonably related to the goals of probation and "narrowly tailored to avoid unnecessary interference" with Galindo's constitutional rights,[43] and if so, to reconsider the definition of "sexually explicit material" employed in the conditions.

*Conclusion*

We REMAND Galindo's case to the superior court for reconsideration of the plethysmograph provision in Special Condition of Probation No. 3, as well as Special Conditions of Probation Nos. 6, 13, and 14, in accordance with the guidance provided in this opinion. We REVERSE the residential treatment provision in Special Condition of Probation No. 5. With those exceptions, we AFFIRM the judgment of the superior court.

---

[43]  *See Simants v. State*, 329 P.3d 1033, 1039 (Alaska App. 2014) (internal quotations omitted).