NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter.  Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ADAM CHARLES DERE,

                    Appellant,

          v.

STATE OF ALASKA,

                    Appellee.

Court of Appeals No. A-12338
Trial Court No. 3AN-13-10287 CR

O P I N I O N

No. 2644 — May 17, 2019

Appeal from the Superior Court, Third Judicial District, Anchorage, Philip R. Volland, Judge.

Appearances:  Brooke Berens, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for the Appellant. A. James Klugman, Assistant District Attorney, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Adam Charles Dere was charged with first-degree robbery, fourth-degree assault, and third-degree theft,[1] based on allegations that Dere borrowed another man's mobile phone and then, when the man asked Dere to return his phone, Dere assaulted the man with an electrical stun device and ran off with the phone.

The primary issues in this appeal arise from the fact that the jury at Dere's first trial was unable to reach a verdict on the robbery charge, and the judge ultimately declared a mistrial on that count. Then, over defense objection, the judge allowed the jury to continue deliberating on the lesser charges of assault and theft — and the jury returned guilty verdicts on those two counts.

Dere's first major argument on appeal is that the jury at his first trial should not have been allowed to return verdicts on the charges of assault and theft.

Dere contends that, given the State's theory of prosecution, and given the evidence presented at Dere's trial, both the charge of fourth-degree assault and the charge of third-degree theft were lesser included offenses of the robbery charge. And because (according to Dere) these lesser offenses were necessarily included in the robbery charge, Dere argues that the trial judge committed error when the judge allowed the jurors to continue deliberating on the assault and theft charges after the jurors could not reach unanimous agreement on the robbery charge. Dere contends that the judge should have declared a mistrial as to all three charges: robbery, assault, and theft.

Dere's second major argument on appeal arises from the fact that, after the mistrial on the robbery charge, the State brought Dere to trial a second time for robbery. At this second trial, Dere's attorney asked the judge to allow the jury to deliberate on the assault and the theft charges, even though Dere had already been found guilty of those

_____

[1] AS 11.41.500(a)(2), AS 11.41.230(a)(1), and former AS 11.46.140(a)(1) (pre-2016), respectively.

charges. The judge refused to instruct the jury on the charges of assault and theft — concluding that it would be improper to allow Dere to use the second trial as a means of relitigating the two guilty verdicts from the first trial. On appeal, Dere contends that the judge's decision was error.

Both of Dere's appellate claims require us to revisit the law that governs situations where a jury is instructed on a charged offense and, in addition, one or more lesser included offenses.

This Court has issued several decisions in this area, and one of them — *Hughes v. State*, 668 P.2d 842 (Alaska App. 1983) — deals with the precise situation presented at Dere's first trial, where the jury deadlocked on the charged offense but was later able to reach a verdict on a lesser included offense.

In *Hughes*, we upheld the trial judge's decision to declare a mistrial on the charged offense, to allow the jurors to continue deliberating on the lesser offense, and ultimately to accept the jury's verdict on the lesser offense — but to delay entering judgement and imposing sentence until after the charged offense was retried and resolved. Thus, *Hughes* approves the procedure that was adopted by the judge at Dere's first trial.

On appeal, Dere argues that *Hughes* was wrongly decided, and that our decision in *Hughes* is inconsistent with things that this Court has said in other cases dealing with this area of the law. As we explain in this opinion, the *holdings* of our other cases are all consistent with *Hughes*, but one of these cases contains *dictum* that is potentially contrary to our holding in *Hughes*. We therefore take this opportunity to further explain and clarify the law that governs these situations.

Dere raises other issues on appeal: he claims that the prosecutor at his first trial violated the State's duty of pre-trial discovery by providing tardy disclosure of a recording of Dere's police interview, and Dere also challenges two conditions of his

probation. For the reasons explained in this opinion, we reject these claims with one exception: we conclude that one of the challenged conditions of Dere's probation amounts to plain error, and we therefore vacate it.

*Background facts*

On September 21, 2013, Johnny Grafft finished his shift at an Anchorage restaurant. Grafft was about to walk home when Dere approached him outside the restaurant and asked to borrow his mobile phone. Grafft obliged him.

After Dere unsuccessfully attempted to place a call, he briefly gave the phone back to Grafft, but then he snatched it from Grafft's hand. After grabbing the phone, Dere circled behind Grafft and shocked him twice with an electrical stun device. Then Dere ran off with the phone into some adjoining woods.

Grafft returned to the restaurant and alerted his co-workers that a man had "tased" him and stolen his mobile phone. Several of the restaurant employees went looking for Dere. They found him in the woods and subdued him. An electrical stun device shaped like brass knuckles was discovered in Dere's pocket, but Dere no longer had the mobile phone. The employees took Dere back to the restaurant's parking lot, and Grafft identified Dere as the man who had assaulted him and stolen his phone.

Three Anchorage police officers were dispatched to the scene. One of them searched the nearby woods and located Grafft's mobile phone. Another officer interviewed Dere for about 30 minutes. In this recorded interview, Dere acknowledged being present when Grafft's phone was taken, but Dere claimed that "a friend of his named Billy" was the one who tased and robbed Grafft.

According to the interviewing officer, Dere "couldn't really tell me anything about Billy — couldn't tell me his last name, where he lived, what his phone number was, [or] anything like that."

As we explained at the beginning of this opinion, Dere was charged with three crimes — first-degree robbery, fourth-degree assault, and third-degree theft — based on these events.

Dere was brought to trial twice in connection with these charges. At Dere's first trial, Dere's attorney conceded that Dere was guilty of the two lesser charges — *i.e.*, the assault and the theft — but the defense attorney argued to the jury that the State had overreached when it charged Dere with first-degree robbery.

According to the defense attorney, the State's evidence failed to establish some of the necessary elements of first-degree robbery. Although Dere's attorney conceded that Dere had struck Grafft with the knuckle-shaped device, the defense attorney argued that this device did not qualify as a "stun device" in the eyes of the law — and that, in any event, there had been no battery in the device when Dere used it to strike Grafft. Thus, the attorney argued, even if Dere committed robbery, Dere was not guilty of *first-degree* robbery — a charge which required the State to prove that Dere used or attempted to use a dangerous instrument or a defensive weapon in aid of the taking. [2]

The defense attorney also argued that, even though Dere struck Grafft, Dere did not commit this assault for the purpose of taking or retaining possession of Grafft's mobile phone. According to the defense attorney, Dere's crimes of assault and theft were completely independent of each other, and Dere was therefore not guilty of robbery at all — not even in the second degree.

---

[2] *See* AS 11.41.500(a)(2).

During the jury's deliberations, the foreman sent a note to the judge indicating that the jury was deadlocked on the charge of first-degree robbery. In response to this note, the judge summoned the jury to the courtroom and asked each juror whether they believed that further deliberations would be helpful. Each juror confirmed that the jury was in fact deadlocked on the charge of first-degree robbery. The jury foreman told the judge that the jurors had not reached verdicts on the remaining counts of theft and assault, but the foreman also stated that he believed the jury could reach verdicts on those counts.

Dere's attorney objected to any continued jury deliberations on the assault and theft charges. He asserted that, under the State's theory of the case, the assault and the theft charges were lesser included offenses of the robbery charge. (As we have already explained, the defense attorney was partially correct: the assault charge was a lesser included offense, but the theft charge was not.)

Based on his assertion that both of the lesser offenses were included in the robbery charge, the defense attorney argued that if the jurors could not reach a verdict on the robbery charge, they should be told to stop deliberating altogether — without returning any verdict on the assault and theft charges.

In response, the prosecutor noted that the crimes of assault and theft were charged independently, as separate counts of the charging document. Because of this, the prosecutor argued that even if the assault and the theft might qualify as lesser included offenses of the robbery, the jury should nevertheless continue deliberating on these two remaining charges.

After hearing the attorneys' positions, the judge declared a mistrial on the first-degree robbery count, but he allowed the jury to continue deliberating on the assault and theft counts.

The judge stated that, given the way Dere's case was being litigated, he was unsure whether the assault and the theft were actually lesser included offenses of the robbery. But the judge ultimately concluded that there was no manifest necessity to declare a mistrial on the assault and theft charges, so he instructed the jury to continue deliberating on those charges. After resuming deliberations, the jury found Dere guilty of the assault and theft charges.

The State elected to try Dere again on the first-degree robbery charge. Prior to this retrial, Dere's attorney filed a series of motions arguing that, because Dere had already been tried and convicted of assault and theft, and because these two crimes constituted lesser included offenses of robbery, any retrial of the robbery count would violate the guarantee against double jeopardy. The judge denied these motions.

Then, at the beginning of the second trial, Dere's defense attorney argued that the jury should be instructed to deliberate and return verdicts, not just on the robbery charge, but also on the crimes of assault and theft, even though the first jury had already found Dere guilty of those crimes. The defense attorney argued that this procedure was necessary so that the jury at the second trial would have the same opportunity as the first jury to consider whether the assault and the theft were truly independent crimes, rather than components of a robbery. The judge denied the defense attorney's request.

When the parties discussed jury instructions toward the end of Dere's second trial, neither the prosecutor nor the defense attorney requested an instruction on the lesser offense of second-degree robbery — even though one of the defense attorney's primary themes at Dere's first trial was that the stun device contained no battery, and thus Dere could be guilty of no more than second-degree robbery.

However, the defense attorney again requested to have the jury instructed on the lesser crimes of assault and theft. The judge denied this request.

The jury deliberated and found Dere guilty of first-degree robbery.

– 7 –

At Dere's sentencing, the judge merged the assault and theft verdicts from Dere's first trial with the robbery verdict from his second trial. Based on these verdicts, the judge entered a single conviction and sentence for first-degree robbery.

(As we explain in the next section of this opinion, theft is not a lesser included offense of robbery, and thus the superior court should not have merged the robbery and theft verdicts into a single conviction. However, the State does not challenge this irregularity on appeal.)

### *The double jeopardy principles that govern this case*

In this appeal, Dere renews his assertion that his crimes of assault and theft were lesser offenses that were necessarily included in the robbery charge. And based on his assertion that the assault and the theft were lesser included offenses of the robbery, Dere argues that the State violated his rights under the double jeopardy clause by bringing him to trial a second time on the robbery charge — or, at least, by bringing him to trial a second time for robbery without also allowing the second jury to re-decide whether Dere was guilty of assault and theft.

There are four principles of double jeopardy law that apply to Dere's case — principles that apply generally whenever a defendant is brought to trial on a charged offense that necessarily includes one or more lesser offenses.

The first principle is that, once jeopardy has attached at a criminal jury trial (*i.e.*, once the jury has been sworn),[3] the defendant is entitled to have that jury decide the case unless (1) the defendant consents to ending the trial prematurely, or (2) there is a manifest necessity for declaring a mistrial — *i.e.*, a necessity for ending the trial before

---

[3] *Tritt v. State*, 173 P.3d 1017, 1019 (Alaska App. 2008).

the jury has resolved the issues before it. [4]  If the jury is discharged without the defendant's consent before it has returned a verdict, and if there was no manifest necessity for discharging the jury, then the defendant cannot be retried for that offense. [5]

The second principle is that, even though there are lesser offenses that are necessarily included in the charged offense, and even though the jury may be able to reach a verdict on a lesser offense, the government is still entitled to have the jury decide the charged offense. [6]

The third principle is that, if a mistrial is declared on one or more charges, and if the defendant consented to the mistrial, or if there was a manifest necessity for declaring a mistrial on those charges, then the ensuing retrial of the charges does not constitute a second jeopardy.  Rather, the retrial is a continuation of the defendant's earlier jeopardy. [7]

---

[4]  *Douglas v. State*, 214 P.3d 312, 326 (Alaska 2009).

[5]  *Green v. United States*, 355 U.S. 184, 190-91; 78 S.Ct. 221, 225; 2 L.Ed.2d 199 (1957); *Whiteaker v. State*, 808 P.2d 270, 277-78 (Alaska App. 1991).

[6]  *Staael v. State*, 697 P.2d 1050, 1056 (Alaska App. 1985) ("The government, like the defendant, is entitled to resolution of the case by a verdict from the jury."), *affirmed* 718 P.2d 948 (Alaska 1986).

[7]  *Staael v. State*, 697 P.2d 1050, 1055-56 (Alaska App. 1985); *Richardson v. United States*, 468 U.S. 317, 325; 104 S.Ct. 3081, 3086; 82 L.Ed.2d 242 (1984):

[T]he protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy.  [The] petitioner's argument necessarily assumes that the judicial declaration of a mistrial was an event which terminated jeopardy in his case and which allowed him to assert a valid claim of double jeopardy [against the ensuing retrial].  ...  [But] the failure of the jury to reach a verdict is not an event which terminates jeopardy.

The fourth principle is that, once a defendant has faced jeopardy for an offense and that offense has been resolved with either a conviction or an acquittal, the government is thereafter barred from initiating a successive prosecution against the defendant (1) for a lesser offense that was necessarily included in the original offense, or (2) for a greater offense which necessarily includes the original offense for which the defendant was convicted or acquitted. [8]

Even before the United States Supreme Court articulated this fourth principle as a component of federal double jeopardy law in *Brown v. Ohio* in 1977, this principle had been a feature of Alaska's statutory law for decades. It was codified in the Carter Code of 1900, [9] and it is currently found in Alaska Statute 12.20.040:

> When the defendant is convicted or acquitted of a crime consisting of different degrees, the conviction or acquittal is a bar to another prosecution for the crime charged in the former or for any inferior degree of that crime, or for an attempt to commit that crime, or for an offense necessarily included in the crime of which the defendant might have been convicted under the information, indictment, or complaint.

---

[8]  *See Brown v. Ohio*, 432 U.S. 161, 165-68; 97 S.Ct. 2221, 2225-26; 53 L.Ed.2d 187 (1977); *Staael v. State*, 697 P.2d 1050, 1055-56 (Alaska App. 1985).

[9]  Thomas H. Carter, *The Laws of Alaska* (1900), Part Two – Code of Criminal Procedure, Sec. 107:

*Conviction or acquittal for crime consisting of different degrees, when a bar to another indictment*. That when the defendant shall have been convicted or acquitted upon the indictment for a crime consisting of different degrees[,] such conviction or acquittal is a bar to another indictment for the crime charged in the former, or for any inferior degree of that crime, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that indictment, as provided in sections one hundred and forty-six and one hundred and forty-seven of this Title.

(Because this statute predates the Alaska Supreme Court's adoption of the "cognate" approach to lesser included offenses, there is a question as to whether this statute applies only to offenses that are necessarily included under the federal "statutory elements" test, or whether this statute now incorporates the cognate approach to lesser included offenses that our supreme court adopted in *Elisovsky v. State*. [10] The facts of Dere's case do not require us to answer this question.)

---

[10] Different jurisdictions use different tests for evaluating whether one offense is necessarily included in another. The federal courts use the *Blockburger* test — a statutory test which simply compares the elements of one offense with the elements of the other offense, without regard to the particular facts of the defendant's case. *See Blockburger v. United States*, 284 U.S. 299, 304; 52 S.Ct. 180, 182; 76 L.Ed. 306 (1932). *See also Brown v. Ohio*, 432 U.S. 161, 166; 97 S. Ct. 2221, 2226; 53 L. Ed. 2d 187 (1977) (stating that if offenses are separate under the *Blockburger* test, then they are separate offenses for double jeopardy purposes, "notwithstanding a substantial overlap in the proof offered to establish the crimes.").

Alaska law inherited this federal approach to lesser included offenses, and this was the governing law when the Alaska Legislature enacted AS 12.20.040 in 1962. *See* SLA 1962, ch. 34, § 1.14. But seventeen years later, in 1979, the Alaska Supreme Court rejected the federal "statutory elements" approach in favor of the "cognate" approach. *See Elisovsky v. State*, 592 P.2d 1221, 1226 (Alaska 1979).

Under the cognate approach, the question of whether a lesser offense is "necessarily included" in the charged offense is not answered merely by looking at the statutory elements of the two offenses. Rather, a trial judge is to identify necessarily included offenses by (1) evaluating the government's theory of prosecution in the defendant's particular case (as shown by the allegations in the indictment and the evidence presented at trial), and by (2) evaluating the defendant's theory of defense. *Elisovsky*, 592 P.2d at 1225-26.

Under this approach, a lesser offense is necessarily "included" in the charged offense if, given the facts of the case, it would be impossible for the defendant to commit the charged offense without also committing the lesser offense, and when conviction of the greater offense requires the jury to find a disputed fact that is not required for conviction of the lesser.

– 11 –                                                          2644

*Dere's argument that the judge at his first trial should not have allowed the jury to return verdicts on the assault and theft charges*

Dere argues that it was unlawful for the judge at his first trial to allow the jury to continue deliberating on the charges of assault and theft after the judge declared the jury to be hung on the robbery charge (*i.e.*, after the judge found that there was no probability that the jury could reach a unanimous decision regarding the robbery charge). [11] Dere's argument has two components.

First, Dere asserts that the assault and theft charges were necessarily included in the charge of robbery. Second, Dere asserts that whenever a lesser crime is necessarily included in a greater crime, it is unlawful for the jurors to return a verdict on the lesser crime if they are unable to reach unanimous agreement on the greater crime.

*The relationship between the charge of first-degree robbery and the separate charges of theft and assault*

Dere is mistaken when he asserts that his theft charge was necessarily included in his robbery charge.

Colloquially, one might describe the crime of robbery as the combined act of assaulting someone and taking their property. Thus, seemingly, a defendant who commits a robbery has necessarily committed a theft. But as a legal matter, this is not the case.

As defined in AS 11.41.510(a), the crime of robbery consists of taking or attempting to take property from the immediate presence and control of another person

---

[11] *See Koehler v. State*, 519 P.2d 442, 448-49 (Alaska 1974) (holding that there is a manifest necessity for declaring a jury hung, and for discharging the jury, when "there is no probability that a unanimous verdict will be reached").

if, during the course of the taking or attempted taking, the defendant "uses [force] or threatens the immediate use of force upon any person with [the] intent to ... prevent or overcome resistance to the taking of the property or the retention of the property after [the] taking."

For purposes of analyzing the relationship between a charge of robbery and a charge of theft, the important aspects of this definition are that a charge of robbery does not require the State to prove (1) that the defendant actually succeeded in taking the property, nor does a robbery charge require the State to prove (2) that the defendant took the property with the intent to permanently deprive the victim of the property.

See *Nell v. State*, 642 P.2d 1361, 1365-66 (Alaska App. 1982), where this Court expressly rejected the contention that a charge of robbery requires the State to prove that the defendant intended to permanently deprive the victim of the property.

Because a charge of theft requires the State to prove that the defendant acted with the intent to permanently deprive the victim of the property, [12] and because a charge of robbery does not require proof of this intent, one may commit robbery without committing theft. For this reason, the Alaska Supreme Court held in *State v. Minano*, 710 P.2d 1013, 1016 (Alaska 1985), that theft is not a lesser included offense of robbery.

(In Dere's case, for instance, Dere no longer had Grafft's mobile phone in his possession when he was apprehended. Rather, the police found Grafft's phone when they searched the woods. This evidence was at least consistent with the theory that Dere only wanted the phone for a short time, and that he discarded it in the woods when he was done with it. This view of the evidence would suggest that Dere was guilty of robbery but not theft.)

---

[12] *State v. Minano*, 710 P.2d 1013, 1016 (Alaska 1985); AS 11.46.100 (the definition of theft).

In sum, under Alaska law, theft is not a lesser included offense of robbery. Dere's theft of the mobile phone had to be charged separately, and the jury had to resolve that charge separately, regardless of its verdict — or its inability to reach a verdict — on the robbery charge.

Turning to Dere's fourth-degree assault charge, the Alaska Supreme Court has not definitively resolved the issue of whether assault is a lesser included offense of robbery. However, the supreme court's decision in *Woods v. State*, 667 P.2d 184, 187-88 (Alaska 1983), strongly suggests that a charge of fourth-degree assault under AS 11.41.230(a)(1) is not a lesser included offense of robbery.

The defendant in *Woods* was convicted of first-degree sexual assault, and a question arose as to whether the superior court could impose an aggravated sentence based on the fact that Woods inflicted physical injury on his victim.

Under AS 12.55.155(c)(1), a felony defendant who is subject to presumptive sentencing can receive an aggravated sentence if "a person, other than an accomplice, sustained physical injury as a direct result of the defendant's conduct". However, another section of the same statute — AS 12.55.155(e) — declares that "if a factor in aggravation is a necessary element of the [defendant's] offense, ... that factor may not be used to impose [an aggravated] sentence".

Woods pointed out that the charge of first-degree sexual assault required the State to prove that Woods used force or threat of force to coerce his victim to engage in sexual penetration. [13] Based on this requirement of forcible coercion, Woods argued that the infliction of physical injury was a necessary element of his charge of first-degree sexual assault — and thus, under AS 12.55.155(e), the superior court would be forbidden from aggravating Woods's sentence based on the fact that he injured his victim.

---

[13] *See* AS 11.41.470(8).

The Alaska Supreme Court rejected this argument. The court noted that the element of "without consent" can be established by "mere threat of imminent physical injury", and that "no actual physical injury need occur". [14] Because of this, the supreme court declared that "physical injury is not a necessary element of the crime of sexual assault in the first degree" — and, thus, "the superior court could properly consider [the victim's] physical injuries as an aggravating factor in sentencing Woods." [15]

Although the decision in *Woods* is not necessarily dispositive of Dere's claim that assault is a lesser included offense of robbery, the supreme court's analysis in *Woods* strongly suggests that Dere's charge of fourth-degree assault under AS 11.41.-230(a)(1) was *not* included in his charge of robbery.

Under AS 11.41.230(a)(1), a charge of fourth-degree assault requires the State to prove that the defendant "recklessly caus[ed] physical injury to another person". (In this context, "physical injury" means "physical pain or an impairment of physical condition". [16]) In contrast, a charge of robbery requires the State to prove only that the defendant used force, or threatened the immediate use of force, for the purpose of obtaining possession (or retaining possession) of property. A robbery charge does not require the State to prove that the defendant inflicted physical injury on anyone.

Under the reasoning in *Woods*, it would appear that a charge of robbery does not necessarily include a charge of fourth-degree assault under AS 11.41.230(a)(1). However, there is no appellate decision directly resolving this point, and the parties do not discuss the *Woods* decision. For this reason, we will analyze Dere's case under the

---

[14] *Woods*, 667 P.2d at 187.

[15] *Id.* at 188.

[16] AS 11.81.900(b)(47).

debatable assumption that his fourth-degree assault charge was a lesser included offense of his robbery charge.

To summarize our discussion thus far: Dere argues that it is unlawful to allow a jury to return a verdict on a lesser included offense if the jury is deadlocked on the greater offense. But this argument is not relevant to Dere's theft charge, because our supreme court has held that theft is not a lesser included offense of robbery, and Dere's argument is only debatably relevant to his assault charge, because the supreme court's decision in *Woods* suggests that assault may not be a lesser included offense of robbery either.

*After Dere's trial judge declared the jury to be hung on the robbery charge, the judge properly allowed the jury to continue deliberating on the fourth-degree assault charge*

We now turn to the legal merits of Dere's contention that, when a defendant faces a greater charged offense and one or more lesser included offenses, and when the trial judge declares the jury to be hung on the charged offense, it is unlawful for the judge to allow the jury to continue deliberating and return a verdict on a lesser included offense.

This Court has, in fact, already rejected this argument: *see Hughes v. State*, 668 P.2d 842 (Alaska App. 1983). We discuss the *Hughes* decision in the next section of this opinion.

*(a) This Court's decision in* <u>Hughes v. State</u>

*Hughes v. State* involved a situation like Dere's case: the defendant in *Hughes* was charged in separate counts with crimes that stood in the relation of greater

offense and lesser included offense. After the case was submitted to the jury, the jurors informed the trial judge that they were deadlocked with respect to the greater charge, but they were able to reach a verdict on the lesser charge. [17]

Like the trial judge in Dere's case, the trial judge in *Hughes* ultimately declared a mistrial on the greater charge, but he accepted the jury's verdict on the lesser charge. And, like the judge in Dere's case, the judge in *Hughes* did not immediately enter judgement against the defendant and sentence him for the lesser crime. Instead, the judge simply received the jury's verdict, allowed the State to retry the defendant on the greater charge, and then — after all of the charges were finally resolved — the judge entered judgement and sentenced the defendant. [18]

On appeal, Hughes argued that it was a violation of the double jeopardy clause for the State to retry him on the greater charge, given that Hughes had already been found guilty of a lesser included charge. But this Court rejected Hughes's double jeopardy argument, and we upheld the result of Hughes's second trial — that is, we upheld Hughes's conviction for the greater offense. [19]

The wording of the *Hughes* opinion is a little nebulous regarding our reasons for rejecting Hughes's double jeopardy argument, but our decision in *Hughes* ultimately rested on one of the tenets of double jeopardy law that we have already discussed: the rule that when the jury is hung, or when there is some other manifest necessity for ending a criminal trial before the jury has reached a verdict, a retrial does

---

[17] *Hughes*, 668 P.2d at 843.

[18] *Id.* at 843, 846-47.

[19] *Id.* at 846-48.

not subject the defendant to a "second" jeopardy. Rather, the retrial is a continuation of the defendant's initial jeopardy. The retrial is not a "successive prosecution". [20]

Even though the jury at Hughes's first trial found him guilty of the lesser included offense, Hughes's retrial on the greater offense did not violate either the double jeopardy clause or the analogous statutory rule codified in AS 12.20.040 — because both of these rules prohibit only *successive* prosecutions for a greater or lesser offense.

We discussed this point of law more explicitly in *Staael v. State*, 697 P.2d 1050 (Alaska App. 1985):

> *Brown* [*v. Ohio*] and the line of cases it relies upon ... reach a result which in Alaska is required by statute. AS 12.20.040. [But as] the supreme court noted in *Mead v. State*, 489 P.2d 738, 741 (Alaska 1971), this statute only applies to successive separate prosecutions, not multiple convictions in the same continuing prosecution. *Accord Ohio v. Johnson*, 467 U.S. [493, 501-02], 104 S.Ct. [2536,] 2542, 81 L.Ed.2d [425,] 435 [(1984)]. *See also Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), where the Supreme Court ... reaffirmed that jeopardy does not terminate when the jury is discharged because it is unable to agree. The government, like the defendant, is entitled to resolution of the case by a verdict from the jury.

*Staael*, 697 P.2d at 1056.

Thus, Hughes's second trial did not subject him to a second jeopardy. Rather, Hughes's second trial was the culmination of his first jeopardy.

---

[20] *Staael v. State*, 697 P.2d 1050, 1055-56 (Alaska App. 1985); *Richardson v. United States*, 468 U.S. 317, 325; 104 S.Ct. 3081, 3086; 82 L.Ed.2d 242 (1984) ("[T]he failure of the jury to reach a verdict is not an event which terminates jeopardy.").

As we acknowledged in *Hughes*, the situation might have been more problematic if the trial judge, rather than simply accepting the jury's guilty verdict on the lesser included offense, had proceeded to *enter judgement* on that verdict and to sentence Hughes for the lesser included offense (instead of waiting for the results of the retrial). [21] In that circumstance, even though the double jeopardy clause would not bar a retrial, [22] Hughes might potentially have claimed that his retrial for the greater offense was barred by the statutory rule codified in AS 12.20.040. [23]

But in both Hughes's case and Dere's case, the trial judge did not enter judgement against the defendant until all of the charges were resolved. Thus, there was neither a constitutional impediment nor a statutory impediment to holding a retrial on the greater offense.

*(b) This Court's decisions in* <u>Staael v. State</u> *and* <u>Dresnek v. State</u>

On April 12, 1985 (nineteen months after this Court issued our decision in *Hughes*), this Court decided a pair of appeals in which the defendants challenged different aspects of the *Hughes* decision.

One of these cases was *Staael v. State*, 697 P.2d 1050 (Alaska App. 1985). Like *Hughes*, *Staael* presented a situation where the jury was asked to consider both a

---

[21]   *Hughes*, 668 P.2d at 846-47.

[22]   *See People v. Fields*, 914 P.2d 832, 838 (Cal. 1996); *Mauk v. State*, 605 A.2d 157, 170-71 (Md. App. 1992); *State v. Henning*, 681 N.W.2d 871, 883-86 (Wis. 2004). *See also United States v. Bordeaux*, 121 F.3d 1187, 1192-93 (8th Cir. 1997); *People v. Kettler*, 446 N.E.2d 550, 555 (Ill. App. 1993); *State v. Snellbaker*, 639 A.2d 384, 387 (N.J. App. 1994).

[23]   *See People v. Fields*, 914 P.2d 832, 839-840 (Cal. 1996); *Middleton v. State*, 569 A.2d 1276, 1280-81 (Md. 1990) (both cases applying rules similar to AS 12.20.040).

greater charged offense (attempted murder) and a number of lesser included offenses, and where the trial judge ultimately declared the jurors hung as to the greater offense. But unlike the trial judge in *Hughes*, the trial judge in *Staael* declared a complete mistrial and discharged the jury, without giving the jurors a further opportunity to see if they could reach unanimous agreement on a lesser included offense. [24]

Staael was brought to trial a second time, and this time he was convicted of the charged greater offense, attempted murder. [25]

On appeal, Staael conceded that the trial judge correctly found that the jury at his first trial was hung on the attempted murder charge. [26] But Staael noted that there was at least a possibility that, if the jury had been allowed to continue its deliberations, the jury might have found him guilty of one of the lesser included offenses — and Staael contended that, if the jury had indeed found him guilty of a lesser offense, then the double jeopardy clause would have prohibited the State from bringing him to trial a second time on the attempted murder charge. [27] Based on this reasoning, Staael argued that there had been no manifest necessity for declaring a mistrial at the first trial, and therefore the result of the second trial (*i.e.*, Staael's conviction for attempted murder) should be nullified. [28]

---

[24]  *Staael*, 697 P.2d at 1051-52.

[25]  *Id.* at 1052.

[26]  *Id.* at 1053.

[27]  *Ibid.*

[28]  *Ibid.*

Staael acknowledged that his argument was inconsistent with this Court's decision in *Hughes*, but he argued that *Hughes* was wrongly decided. [29] This Court concluded that Staael's argument was based on a misreading of double jeopardy law.

In particular, we re-affirmed our holding in *Hughes* that, even if the jury might be able to reach a verdict on a lesser included offense, the State is still entitled to have the jury decide the greater charged offense. [30] In Staael's case, because the trial judge properly found that the jury was hung as to that greater offense, Staael's retrial on the greater offense was not a "successive prosecution". Rather, it was a continuation of Staael's initial jeopardy. [31]

On the same day that this Court decided *Staael*, we also decided *Dresnek v. State*, 697 P.2d 1059 (Alaska App. 1985), *affirmed* 718 P.2d 156 (Alaska 1986).

*Dresnek* involved only a single trial (not a mistrial and a retrial), but the defendant in *Dresnek* challenged one of the basic premises of the *Hughes* decision: the rule that the government is entitled to a jury verdict on the greater charged offense, even when the jury is able to reach a unanimous verdict on a lesser included offense.

Under *Hughes*, a criminal prosecution cannot *come to an end* with the defendant's conviction of a lesser included offense unless the jury has unanimously concluded that the defendant is not guilty of the greater charged offense. [32] The defendant in *Dresnek* challenged this aspect of *Hughes*.

Dresnek was charged with manslaughter stemming from a motor vehicle accident. The jury at Dresnek's trial was instructed on both manslaughter and the lesser

---

[29] *Ibid.*

[30] *Id.* at 1055-56.

[31] *Id.* at 1056.

[32] *Dresnek*, 697 P.2d at 1062-63.

included offense of criminally negligent homicide, but the jurors were told that they could not return a verdict on the lesser charge (negligent homicide) unless they unanimously found that Dresnek was not guilty of the greater charge (manslaughter). The jury ultimately concluded that Dresnek was guilty of the charged offense, manslaughter. [33]

On appeal, Dresnek argued that the trial judge committed error by telling the jurors that, before they could return a verdict on the lesser offense of criminally negligent homicide, the jurors had to unanimously agree that the State had failed to prove that Dresnek was guilty of the charged manslaughter. [34]

Specifically, Dresnek argued that it was error for the judge to include the word "unanimously" in this jury instruction. Dresnek took the position that, even if only *some* of the jurors thought that the State had failed to prove the charge of manslaughter, the jury should be able to return a verdict on the lesser offense of criminally negligent homicide — and that, based on this verdict, the prosecution against Dresnek would *end* (with Dresnek convicted of only this lesser offense). [35]

This Court rejected Dresnek's position and we re-affirmed this aspect of *Hughes*. In particular, we rejected Dresnek's argument that a criminal prosecution could be terminated without a jury verdict on the charged offense, so long as the jurors were able to reach a verdict on a lesser included offense:

> [W]e rejected [the] premises [of this argument] in *Staael v. State*, 697 P.2d 1050 (Alaska App. 1985), where we held that the trial court may find manifest necessity and declare a

---

[33]  *Id.* at 1060.

[34]  *Ibid.*

[35]  *Id.* at 1061-62.

mistrial permitting retrial on a greater offense even if a jury which is deadlocked on the greater offense might be able to return a unanimous verdict convicting the defendant of a lesser-included offense. *See also Hughes v. State*, 668 P.2d 842 (Alaska App. 1983).

*Dresnek*, 697 P.2d at 1061-62. In the footnote immediately following this passage (footnote 6), we noted that there was no provision of the Alaska Criminal Rules, nor any provision of our criminal statutes, that "precludes a mistrial in a case in which the jurors cannot agree on a greater offense but can agree on a lesser offense." [36]

Of course, courts do not normally instruct jurors that, if they are hung, they may return a verdict on a lesser included offense. This is because, even when jurors are having difficulty reaching agreement, the jurors are not authorized to declare themselves hung. Only a judge can make that determination.

Instead, jurors are initially instructed that it is their duty to reach unanimous agreement — and that they may not return a verdict on a lesser included offense unless they unanimously find the defendant not guilty of the charged offense.

But as this Court held in *Hughes*, if the trial judge ultimately concludes that the jurors are unable to reach unanimous agreement on the charged offense, the judge can declare a mistrial as to that offense and then authorize the jurors to continue deliberating, to see if it is possible for them to reach a verdict on the lesser offense.

If the jurors continue deliberating and find the defendant guilty of the lesser offense, *Hughes*, *Staael*, and *Dresnek* hold that such a verdict will not terminate the prosecution. The proper procedure is for the trial judge to accept the verdict, but to refrain from entering judgement until the greater charge is resolved. The State is authorized to bring the defendant to trial again on the greater charged offense (although

---

[36] *Id.* at 1062 n. 6.

the State retains the option of not pursuing a second trial, and instead simply asking the court to enter judgement on the lesser offense).

### (c) This Court's decision in *Whiteaker v. State*

The three decisions that we have discussed so far — *Hughes*, *Staael*, and *Dresnek* — all involve the question of what a trial judge should do in situations where (1) a jury is asked to consider a greater charged offense and one or more lesser included offenses, and (2) the judge concludes that the jurors are hung on the greater charged offense.

There is another, separate issue that sometimes arises in situations where a jury is asked to consider a greater charged offense and one or more lesser included offenses. This issue arises when the jurors tell the court that they are deadlocked, but the jurors neglect to tell the court whether they are deadlocked with respect to the greater charged offense or, instead, with respect to some lesser included offense.

That was the situation presented in *Whiteaker v. State*, 808 P.2d 270 (Alaska App. 1991), where this Court reversed a murder conviction on double jeopardy grounds.

The defendant in *Whiteaker* was charged with first-degree murder, and the jury was also instructed on the three lesser degrees of criminal homicide (second-degree murder, manslaughter, and criminally negligent homicide), on the theory that these were lesser included offenses. [37]

Following deliberations, the jurors announced that they were deadlocked — but the jurors did not indicate *which charge* they were deadlocked on. Whiteaker's

---

[37] *Whiteaker*, 808 P.2d at 274.

defense attorney argued that, at least potentially, the jurors had unanimously voted to acquit Whiteaker of first-degree murder, and they were deadlocked on one of the lesser degrees of criminal homicide. For this reason, the defense attorney urged the trial judge to poll the jurors, or to otherwise inquire whether the jurors had reached a verdict on any of the charges before them. But the trial judge refused to conduct this inquiry; he instead declared a mistrial and discharged the jury. [38]

(The judge was apparently persuaded by the prosecutor's argument that, because the jury had been instructed not to return a verdict on any of the lesser offenses until they had reached a verdict on first-degree murder, the jurors must have been deadlocked on first-degree murder. [39])

The State brought Whiteaker to trial a second time, and at this second trial Whiteaker was found guilty of second-degree murder. [40] Whiteaker then appealed, arguing that the State had violated the double jeopardy clause by bringing her to trial a second time.

This Court held that the judge committed error at Whiteaker's first trial by declaring a mistrial without ascertaining whether the jurors had reached a unanimous verdict on any of the offenses before them. For this reason, this Court held that the double jeopardy clause prevented the State from retrying Whiteaker on any charge except criminally negligent homicide — the least serious charge on which the jury might potentially have been deadlocked. [41]

---

[38]   *Id.* at 272-73.

[39]   *Id.* at 272.

[40]   *Id.* at 271.

[41]   *Id.* at 277-79.

As the United States Supreme Court explained in *Green v. United States*, 355 U.S. 184, 190-91; 78 S.Ct. 221, 225; 2 L.Ed.2d 199 (1957), there are actually two constitutional theories that potentially support this result.

The first theory is based on the premise that juries are normally told that they should not return a verdict on a lesser included offense unless they have found the defendant not guilty of the charged offense. Thus, if the jurors had indeed been deadlocked on a lesser offense, this would impliedly mean that the jurors had already unanimously decided that the defendant was not guilty of the greater offense — even if they neglect to explicitly say so. [42]

The second theory is based on the constitutional rule that, once a jury has been sworn and jeopardy has attached, the defendant is entitled to have that jury decide the case unless (1) the jury is discharged with the defendant's consent or (2) there is a manifest necessity to discharge the jury before it has reached a verdict. [43]

In *Whiteaker*, the trial judge discharged the jury without ascertaining whether the jurors had reached a verdict on any of the charges before them. All the judge knew was that the jurors were deadlocked, and he failed to take any affirmative step to identify which charge they were deadlocked on.

If, in fact, the jurors had reached agreement on one or more of the greater charges, and they were deadlocked with respect to one of the lesser degrees of criminal homicide, then with respect to every charge *except* the one that led to the jury deadlock, there was no manifest necessity to discharge the jury short of a verdict. And if the jury was discharged over Whiteaker's objection when there was no manifest necessity for

---

[42]  *Green*, 355 U.S. at 190-91, 78 S.Ct. at 225.

[43]  *Ibid.*

doing so, then the double jeopardy clause prohibited the State from bringing Whiteaker to trial a second time on those charges.

Since it was impossible to know for sure which charge had led to the jury deadlock in Whiteaker's case, this Court concluded that Whiteaker would be unlawfully placed in jeopardy a second time if, upon retrial, she was prosecuted for any crime greater than the least serious of the lesser offenses — criminally negligent homicide. [44]

In the present appeal, Dere analogizes the events at his first trial to the situation in *Whiteaker*. But as we have just explained, *Whiteaker* presented a situation that was materially different from Dere's case.

The problem in *Whiteaker* was that, because the judge failed to ask the jury to clarify the status of their deliberations, the judge declared a mistrial and discharged the jury when the only thing he knew for sure was that the jurors were deadlocked on one unspecified charge, and when the judge did not know whether the jurors had reached a decision on one or more of the other offenses before them. For this reason, this Court concluded that the defendant in *Whiteaker* would be unlawfully placed in jeopardy a second time if, upon retrial, she was prosecuted for any crime greater than criminally negligent homicide.

This was not the situation in Dere's case. At the end of Dere's first trial, it was clear where the jurors stood: they were unable to reach a verdict on the robbery charge, but they unanimously agreed that Dere was guilty of assault and theft. We therefore reject Dere's attempt to analogize his case to the facts of *Whiteaker*.

Dere also argues that there is a footnote in *Whiteaker* which overrules *Hughes sub silentio* (that is, it overrules *Hughes* without mentioning the case by name).

---

[44]   The California Supreme Court adopted the same approach to this double jeopardy problem in *Stone v. Superior Court*, 646 P.2d 809, 818-820 (Cal. 1982).

Dere points to footnote 6 of the *Whiteaker* opinion — a footnote which states that Alaska law does not allow a jury to return a verdict on a lesser included offense if the jury is "deadlocked" on the greater charged offense. Here is the text of that footnote:

> Whiteaker does not argue that she is entitled to a verdict on lesser-included offenses where the jury is deadlocked on the greatest offense. We concur with other jurisdictions which hold that such partial verdicts are often compromise verdicts and should not be considered final verdicts. *Dresnek*, 697 P.2d at 1062; *Staael v. State*, 697 P.2d 1050, 1056 (Alaska App. 1985). Jurisdictions which allow such verdicts often have legislation or court rule which authorizes them. ... Alaska has no such law or court rule and our decision in *Dresnek*, 697 P.2d at 1062 n. 6, precludes such an approach.

*Whiteaker*, 808 P.2d at 274 n. 6.

Dere suggests that this footnote is irreconcilable with this Court's earlier decision in *Hughes*, and he argues that this footnote represents the true state of Alaska law on this subject. We reject Dere's argument for several reasons.

First, this footnote is completely *dictum*. As the footnote itself acknowledges, Whiteaker's appeal did not raise the issue of whether a court can allow a jury to continue deliberating and return a verdict on a lesser included offense after the jury announces that it is deadlocked with respect to the greater offense.

Second, it is all but inconceivable that this Court would overrule *Hughes* in a case that did not raise the issue decided in *Hughes*. It is even more inconceivable that this Court would overrule *Hughes* in a footnote that does not mention *Hughes* — but which *does* mention two other decisions (*Staael* and *Dresnek*) which affirm various aspects of the *Hughes* decision.

Third, the footnote cites *Staael* and *Dresnek* as standing for the proposition that "partial verdicts are often compromise verdicts and should not be considered final verdicts". This is wrong. *Hughes* expressly authorizes a court to accept such verdicts — and, contrary to what the *Whiteaker* footnote says, neither our decision in *Staael* nor our decision in *Dresnek* precludes the procedure that this Court explicitly endorsed in *Hughes*.

In short, after a trial judge concludes that the jury is hung on the greater charged offense, Alaska law allows the judge to direct the jurors to continue deliberating and potentially return a verdict on a lesser included offense. To the extent that the *Whiteaker* footnote might be interpreted as saying that this procedure is unlawful, the footnote is wrong.

Because of all this, we conclude that when the *Whiteaker* footnote refers to a "partial verdict" returned by a "deadlocked" jury, the footnote is referring to the proposition that this Court expressly rejected in *Dresnek* — *i.e.*, Dresnek's contention that a jury should be allowed to return a *litigation-ending verdict* on a lesser included offense if *the jurors* believe that they cannot reach unanimous agreement on the charged offense.

In this context, "deadlocked" does not mean the same thing as "hung". The jurors may believe that they are "deadlocked" in the sense that they do not perceive any way for them to reach unanimous agreement on the charged offense. But the jurors are not yet "hung" — because that requires a judicial ruling.

As our cases make clear, the fact that jurors may find themselves unable to agree does not mean that they are "hung" for purposes of declaring a mistrial. A trial judge can properly direct the jurors to continue deliberating if they have not yet deliberated for an extended period of time. The judge can also ask the jurors if there are any matters of law that they would like to have clarified. And the judge can give the

jurors the kind of instruction that was endorsed by our supreme court in *Fields v. State*, 487 P.2d 831, 842-43 n. 37 (Alaska 1971) — an instruction urging the jurors to extend "a proper regard and deference to the opinions of each other" and to "consult with one another and ... deliberate with a view to reach[ing] agreement", if that can be done "without violence to [their] individual judgment".

The jurors are "hung" on the charged offense (and a mistrial is warranted) only if the jurors' deadlock persists to the point where *the judge* concludes that there is no probability that a unanimous verdict will ever be reached. [45]  In *Hughes*, this Court declared that, in such circumstances, the trial judge can declare a mistrial on the charged offense and authorize the jury to continue deliberating on lesser included offenses. *Dresnek* says nothing different.

To the extent that footnote 6 of *Whiteaker* might be interpreted as endorsing a different rule from the one we adopted in *Hughes*, we now formally disavow that interpretation.

### (d) Conclusion:  It was proper to allow the jury at Dere's first trial to return verdicts on the assault and theft charges

At Dere's first trial, the jury was unable to reach a verdict on the first-degree robbery charge.  This left two charges remaining:  assault and theft.

As we have explained, the Alaska Supreme Court has held that a charge of theft is not a lesser included offense of a robbery charge.  Thus, the trial judge was required to have the jury decide the theft count in any event.

With regard to the assault count, we are proceeding under the debatable assumption that the fourth-degree assault charge *was* necessarily included within the

---

[45]    *Koehler v. State*, 519 P.2d 442, 448 (Alaska 1974).

robbery charge. But even so, under this Court's decision in *Hughes*, after the trial judge declared the jury hung as to the robbery count, it was proper for the judge to allow the jury to continue deliberating on the assault count, and to return a verdict on that crime.

Dere argues that the dissenting opinion in *Hughes* is better reasoned, that *Hughes* was wrongly decided, and that it should now be overruled. But we have twice declined invitations to overrule the double jeopardy holding of *Hughes*. [46] And under the doctrine of *stare decisis*, it is Dere's burden to convince us (1) that our decision in *Hughes* was clearly wrong at the time it was issued, and (2) that more good than harm would result from overturning this established precedent. [47]

Dere has not met this burden. We therefore decline to overrule *Hughes*.

### (e) Our roadmap for trial judges and trial advocates

We now take this opportunity to summarize the procedures that trial judges should follow when a jury is presented with both a charged offense and one or more lesser included offenses, and when the jurors announce that they are unable to reach agreement on the charged offense.

As we have explained, both the government and the defendant have a right to insist on a verdict on the charged offense. The jurors' mere *announcement* that they are deadlocked on the charged offense is not sufficient, as a legal matter, to relieve the jurors of the duty of rendering a verdict on the charged offense. A judge should take reasonable, non-coercive measures to see if the jurors can, in fact, reach a verdict. But

---

[46]   *Staael v. State*, 697 P.2d 1050 (Alaska App. 1985); *Northcott v. State*, unpublished, 2001 WL 1042868 (Alaska App. 2001).

[47]   *State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986).

if the judge concludes that there is no probability that the jurors can reach a unanimous decision on the charged offense, then the judge can declare a mistrial on that offense.

At that point, if both parties do not expressly agree to a complete discharge of the jury, the judge should ask the jurors whether they believe that they would be able to reach a verdict on a lesser offense if they resumed deliberations. If a significant number of jurors say yes, then the judge should direct the jurors to resume deliberations. But even if the jurors indicate that they do *not* think they would be able to reach a verdict on a lesser offense, the judge must still independently assess whether the jurors are truly hung regarding the potential lesser offenses.

There may be cases — for instance, a case where the sole defense is mistaken identity — where the jurors' inability to reach a verdict on the charged offense will likely also mean that they cannot reach a verdict on lesser offenses either. But in other cases, the jurors may be unable to unanimously agree on the defendant's mental state, or whether the defendant used a deadly weapon, or the like, and this disagreement might not preclude the jurors from reaching a verdict on a lesser offense.

Ultimately, the question is whether there is a manifest necessity for discharging the jurors without an attempt to obtain a verdict on a lesser offense. This is the *judge's* decision, not the jury's — and the test is whether the jurors are at such an impasse that there is no probability that a unanimous verdict can be reached on the lesser offense. [48]

Although Dere's case and the *Hughes* case both involved situations where the lesser included offense was separately charged as a discrete count, we conclude that the same rules apply to situations where a lesser offense is given to the jury, not as a

---

[48]    *Koehler v. State*, 519 P.2d 442, 448 (Alaska 1974).

separately charged count, but merely because the lesser offense is necessarily included in the charged offense and a party has requested it.

On this issue, we agree with the analysis of the California Supreme Court in *Stone v. Superior Court*, 646 P.2d 809 (Cal. 1982). In *Stone*, the California court concluded that, for the purpose of delineating the scope of double jeopardy protections, the situation where the State chooses to charge a lesser included offense in its own separate count is "logically indistinguishable" from the situation where the lesser included offense is given to the jury at a party's request. [49] If the law treated these two situations differently, "such a rule would make [the parties'] substantive rights turn on the formality of whether [the defendant] was charged in separate counts with the greater offense and the lesser included offense, or was charged in a single count with only the greater offense." [50]

If, after the judge has declared a mistrial on the charged offense, the jurors are able to reach a verdict on the lesser offense, the judge should accept the verdict but should refrain from entering judgement against the defendant until the greater charge is resolved — either by a verdict at a retrial, or by dismissal (if the State is willing to end the prosecution with the defendant's conviction on the lesser offense).

If, upon retrial, the defendant is found guilty of the greater offense, then the judge should merge the earlier verdict on the necessarily included offense with the later guilty verdict on the greater offense, and enter only a single conviction for the greater offense. [51]

---

[49] *Stone*, 646 P.2d at 819.

[50] *Ibid.*

[51] *Tuckfield v. State*, 621 P.2d 1350, 1352-53 (Alaska 1981).

On the other hand, if the jury at the retrial finds the defendant not guilty of the greater offense, then the court should enter judgement against the defendant for the lesser included offense, based on the guilty verdict that was returned by the jury at the defendant's earlier trial.

*Why we conclude that Dere was not prejudiced when, at his second trial, the judge declined to instruct the jurors that assault and theft were lesser offenses included within the robbery charge*

Near the beginning of Dere's second trial, Dere's attorney asked the trial judge to instruct the jury to deliberate on, and to return new verdicts on, the crimes of assault and theft — even though the first jury had already found Dere guilty of those crimes. The defense attorney argued that this procedure was necessary so that the jury at the second trial would "have the same opportunity [as the first jury] to evaluate all three counts rather than just ... robbery in the first degree."

The trial judge asked the defense attorney, "So you want, in other words, two bites at the apple? Having been found guilty, you want another trial ... ?" In response to the judge's question, the defense attorney agreed that he was seeking a trial *de novo* on the assault and theft charges: "Yes, sir, two bites at the apple." The judge rejected this request.

Later in the trial, the defense attorney re-formulated his request. Although the defense attorney declared that Dere "would still like to have that second bite of the apple", the attorney now offered a separate rationale for instructing the jurors about the assault and theft charges. He told the judge that the jury should be instructed that assault and theft were lesser included offenses of the robbery, so that the jury at the second trial would have the same opportunity as the first jury to evaluate whether Dere's actions constituted robbery or, instead, merely the two lesser crimes of assault and theft.

The trial judge again denied the defense attorney's request. The judge concluded that, even without jury instructions on the crimes of assault and theft, Dere's attorney was still free to argue to the jury that the State had failed to prove all the elements of robbery — in particular, the element that Dere did not simply assault Grafft (the restaurant worker), but rather that Dere committed this assault *for the purpose of* taking or retaining Grafft's mobile phone.

(As we explained earlier, this was the very strategy that the defense attorney adopted at Dere's first trial — when the attorney explicitly told the jury that they should convict Dere of assault and theft, but he asked the jury to reject the robbery charge because the State had failed to prove that Dere assaulted Grafft for the purpose of facilitating the theft.)

In this appeal, Dere claims that the trial judge committed error at the second trial when the judge refused to instruct the jurors on the crimes of assault and theft.

Dere no longer asserts the initial position taken by his trial attorney — the position that Dere was entitled to a trial *de novo* on the assault and theft charges. But Dere renews his trial attorney's second argument: Dere contends that, without jury instructions on the lesser crimes of assault and theft, the jurors at his second trial might not have understood that the crimes of assault and theft do not necessarily combine to constitute a robbery — that robbery is committed only when the assault is done for the purpose of facilitating the taking (or the retention) of the property.

In making this argument, Dere relies on *dictum* from our decision in *Hughes*. In this *dictum*, we discussed the situation where a mistrial is granted on the charged greater offense, but the jury returns a guilty verdict on a lesser included offense. We suggested that if, in these circumstances, the State chose to pursue a retrial of the greater offense, the trial judge might retrospectively declare a "mistrial" in the *first* trial — so that the second trial would be a replay of the first trial, and so that the court could

avoid the potential problem of having guilty verdicts on both the greater offense and the lesser included offense. *See Hughes v. State*, 668 P.2d at 847-48 & n. 10.

As we have already explained, Dere's theft charge was *not* a lesser included offense within the robbery charge. We therefore reject Dere's argument with respect to the theft charge. Dere was not entitled to a retrial of that charge, nor was he entitled to have the jury instructed that theft was a lesser included offense. We thus limit our discussion to the fourth-degree assault charge (under the assumption that this charge was a lesser included offense of robbery).

We agree with Dere that it was important for the jurors to understand that the offense of robbery consists of more than an assault and a contemporaneous taking of property — that robbery requires a nexus between the assault and the taking. But Jury Instruction 13 addressed this issue of law. In Instruction 13, the jurors were explicitly told that the charge of robbery required the State to prove, not only that Dere "used or threatened the immediate use of force" upon Grafft "in the course of taking ... property from [his] immediate presence and control", but also that Dere's use of force was "intended to prevent or overcome resistance to the taking of the property or the retention of the property".

In other words, the jury was explicitly told that Dere's actions would not constitute robbery unless his assault on Grafft was committed *for the purpose of* facilitating the taking or retention of Grafft's phone. Thus, Dere's defense attorney was free to argue that, even if Dere assaulted Grafft, Dere was not guilty of robbery because the State had failed to prove the requisite relationship between the assault and the theft.

Indeed, at the conclusion of the second trial, Dere's attorney made precisely this argument. During the defense attorney's summation to the jury, the defense attorney relied on Jury Instruction 13 to argue that even if Dere took the phone from Grafft, and even if Dere then assaulted Grafft, Dere was still not guilty of robbery because the

2644

assault and the taking of the mobile phone lacked the necessary relationship to each other. According to the defense attorney, Dere did not use force *to accomplish the taking*, and therefore there was no robbery.

For these reasons, we conclude that Dere was not prejudiced when the trial judge rejected the defense attorney's request to have the jury separately instructed on the crimes of assault and theft.

With regard to the *dictum* in *Hughes* — the suggestion that a trial judge might retrospectively declare a mistrial in a defendant's first trial if the State chose to try the defendant a second time for the greater offense — we note that footnote 10 of the *Hughes* opinion explicitly declares that the Court was *not* deciding whether a mistrial is always required under these circumstances. Rather, we suggested that a mistrial was simply one method of making sure that the defendant was not prejudiced by holding a second trial in which the jury is only asked to decide the remaining greater offense. *Hughes*, 668 P.2d at 848 n. 10.

In fact, footnote 10 of *Hughes* cites the Alaska Supreme Court's decision in *Padie v. State*, 557 P.2d 1138 (Alaska 1976), as another method of dealing with the potential prejudice arising from such a second trial.

The defendant in *Padie* was indicted for the murder of a man who had disappeared more than eight years earlier. Alaska law allowed a prosecution for murder to be brought at any time; but by the time Padie was indicted, the statute of limitations barred the State from prosecuting Padie for any lesser degree of criminal homicide. [52]

Before trial, Padie notified the State that he intended to claim that he acted in the heat of passion, and that his crime was therefore manslaughter — a time-barred

---

[52] *Padie*, 557 P.2d at 1140.

offense. [53] The trial judge ruled that, because the statute of limitations precluded Padie's conviction for manslaughter, it would be improper to instruct the jury on manslaughter — or to even allow Padie's attorney to present evidence supporting a heat-of-passion defense. [54] Padie then petitioned the supreme court to grant interlocutory review of this ruling.

The supreme court agreed with the trial judge that it would be improper to instruct the jury to return a verdict on a charge of manslaughter if, by law, Padie could not be convicted of that crime. [55] Nevertheless, the supreme court ruled that Padie was entitled to present evidence that he acted in the heat of passion, and Padie was likewise entitled to jury instructions which informed the jurors that Padie should be acquitted of murder if they found in Padie's favor on the question of heat of passion (*i.e.*, if the State failed to disprove Padie's heat-of-passion defense beyond a reasonable doubt). [56]

Since the standard instruction on the elements of murder does not normally address the issue of heat of passion, the supreme court concluded that Padie's jury should receive special instructions on the elements of heat of passion, and on the fact that heat of passion is a defense to a charge of murder. But because of the special circumstances of Padie's case, if the jurors found in Padie's favor on the question of heat of passion, they were to be instructed to acquit him, rather than convict him of the lesser offense of manslaughter (which was time-barred). [57]

---

[53]   *Id.* at 1140-41.

[54]   *Id.* at 1141.

[55]   *Id.* at 1142.

[56]   *Ibid.*

[57]   *Ibid.*

Returning to the facts of Dere's case, the trial judge at Dere's second trial might reasonably have chosen to give the jurors an instruction tailored to the defense theory of the case — a special instruction informing the jurors that they should acquit Dere of robbery if they found (1) that Dere had committed an assault and a theft, but if they also found (2) that the State had failed to prove the required connection between the assault and the theft (*i.e.*, that the assault was committed for the purpose of facilitating the taking or retention of Grafft's mobile phone).

(In fact, if Dere's attorney had decided that it would be advantageous to let the jurors know that Dere had already been convicted of the assault and the theft, the defense attorney might conceivably have asked the trial judge to depart from normal procedure by informing the jurors that Dere had been convicted of the assault and the theft at an earlier trial.)

But Dere's case is unlike *Padie* in one important respect. In *Padie*, the standard instruction on the elements of murder would not alert the jurors to the potential defense of heat of passion, so a special instruction on heat of passion was required. In Dere's case, on the other hand, the jury received an instruction on the elements of robbery which sufficiently explained the legal principle that Dere would not be guilty of robbery unless his assault on Grafft was committed for the purpose of facilitating the taking or retention of Grafft's mobile phone.

This instruction on the elements of robbery allowed Dere's attorney to make his chosen argument to the jury. Thus, even though a special instruction on this matter might have been helpful, the omission of such an instruction was not error. As our supreme court has stated, if the existing jury instructions adequately explain the law, a trial judge has broad discretion to give or withhold special instructions on the parties'

theories of the case. In such circumstances, the judge's decision "is subject to review only for abuse of discretion".[58]

Here, because the existing jury instructions allowed Dere's trial attorney to argue his theory of the case, we find no abuse of discretion.

*Dere's claim of a discovery violation*

Immediately prior to the parties' opening statements at Dere's first trial, the prosecutor alerted the trial judge that, through inadvertence, the State had only just then provided the defense attorney with the audio recording of Dere's police interview in the restaurant parking lot. Dere's attorney requested that opening statements be delayed until he could listen to this recording. But when the prosecutor stated that he did not plan on introducing Dere's statements to the officer unless Dere took the stand at trial, the judge decided to proceed with opening statements without further delay.

Much later at trial, during the State's rebuttal case, the prosecutor argued that the defense attorney had questioned the State's police witnesses in such a way as to open the door to admission of Dere's police interview. The judge agreed, and the prosecutor played the recording for the jury.

Now, in the present appeal, Dere argues that the trial judge erred when he admitted the audio recording at Dere's first trial — and that, because of this, Dere is entitled to a new trial on all three charges.

We need not decide whether the trial judge abused his discretion when he allowed the prosecutor to introduce the recorded interview at Dere's first trial, because we conclude that any error was harmless.

---

[58] *Chenega Corp. v. Exxon Corp.*, 991 P.2d 769, 776 (Alaska 1999).

As we explained earlier in this opinion, Dere's attorney expressly told the jurors at the first trial — both in his opening statement and in his summation — that Dere should be convicted of assault and theft. And at the end of the first trial, those were the only charges that Dere was convicted of. Thus, any error in the judge's mid-trial evidentiary ruling did not appreciably affect the jury's verdicts.

And by the time of Dere's second trial, the question of the State's late disclosure of the recording was entirely moot. Dere's attorney prepared for the second trial with full knowledge of, and full access to, the recording of Dere's police interview. Indeed, Dere's attorney did not object to the admission of that recording at the second trial — and we reject any notion that the trial judge was required to exclude the recording *sua sponte*, when the only ground for objection was a late disclosure that was now cured.

*Dere's challenges to two conditions of his probation*

Dere challenges two of his conditions of probation. The sentencing judge imposed these conditions without discussion, but Dere's attorney did not object to them. Because Dere did not object to the imposition of these conditions of probation, he must show plain error. [59]

One of the challenged conditions — Special Condition 11 — requires Dere to obtain a mental health assessment if requested to do so by his probation officer, and to comply with any ensuing treatment recommendations. We find no plain error in the court's imposition of this condition. When the police contacted Dere in the parking lot of the restaurant, Dere was agitated and he was behaving erratically; he told the police

---

[59] *State v. Ranstead*, 421 P.3d 15, 21-23 (Alaska 2018).

that he intended to start choking people. Given these circumstances, the sentencing judge could reasonably conclude that a mental health assessment was appropriate.

The second challenged probation condition — Special Condition 12 — requires Dere to ingest medication prescribed by a physician chosen by Dere's probation officer or mental health provider. The judge heard no testimony supporting this condition, and he entered no findings justifying it.

In *Kozevnikoff v. State*, 433 P.3d 546 (Alaska App. 2018), we disapproved a similar condition of probation, to the extent that it required the defendant to take psychotropic drugs against his will. *Kozevnikoff* was another instance where the sentencing judge failed to hold a hearing on the need for forced medication, and failed to make findings to justify mandated ingestion of psychotropic drugs. [60]

Based on our holding in *Kozevnikoff*, we conclude that it was plain error for the judge to impose this condition of probation in Dere's case. We therefore vacate Special Condition 12.

## Conclusion

We VACATE Special Condition of Probation 12, but in all other respects we AFFIRM the judgement of the superior court.

---

[60] *Kozevnikoff*, 433 P.3d at 548.